[Civ. No. 4302. Fourth Dist. Apr. 25, 1951.]

J. G. BOSWELL COMPANY (a Corporation), Appellant, v. W. D. FELDER AND COMPANY (a Corporation) et al., Respondents.

768

Crider, Runkle & Tilson for Appellant.

Lawrence W. Young and Lopez & Gomes for Respondents.

MUSSELL, J.—Plaintiff appeals from a judgment entered after a verdict of a jury in favor of the defendants in an action for damages alleged by plaintiff to have been suffered by and resulting from the conversion of 29 bales of cotton. The points urged by appellant are (1) That the evidence presented as to payment of plaintiff's claim by an insurance carrier did not constitute a defense to the action; and (2) That the court erred in giving certain instructions to the jury.

Plaintiff corporation was engaged in the business of buying,

selling and shipping cotton and maintained a plant therefor at Corcoran, California. Defendant W. L. Stuart (whose default was entered in the present action) was employed by plaintiff as a shipping clerk from September or October, 1947, to March 15, 1948. Stuart had charge of the shipments of cotton from the plant, issued bills of lading, marked and checked out the bales for shipment, arranged for the loading of trucks, and when shipping orders came through, they were turned over to him to execute. He had an office near the scale house where the records involving the shipping of cotton were kept and had access to such records. In connection with his duties as shipping clerk, Stuart was engaged by plaintiff as a cotton sampler and the loose cotton left over from his sampling operations was baled by plaintiff and left in plaintiff's yard. This cotton belonged to Stuart and he was authorized to sell it. During the 1947-1948 seasons 30 to 40 bales of this loose cotton were in plaintiff's yard and subject to such sale.

On February 25, 1948, defendant B. H. Simpkins (a cotton buyer) purchased 29 bales of cotton from Stuart. Simpkins had previously purchased loose cotton from Stuart and, as stated by W. S. McLeod, there was nothing unusual in the trade to purchase cotton from a man working in the yard; that samplers were employed as shipping clerks and have sometimes accumulated as many as 100 bales in a season. At the time Simpkins made the purchase, he issued a shipping order to a trucking firm with instructions to deliver the cotton to the warehouse of the Pinedale Compress and Warehouse Company. Simpkins had no information as to the bale numbers or the weight of each bale which he purchased and this information was apparently typed on the shipping order by Stuart. The 29 bales were delivered to Pinedale according to instructions and Simpkins sold this cotton to McLeod as agent and buyer for defendant W. D. Felder and Company. Felder and Company purchased the cotton on samples, obtained negotiable receipts therefor and had no knowledge or information that plaintiff Boswell Company had or claimed any interest whatsoever in the cotton sold to it by Simpkins.

G. N. Wilson, the controller of plaintiff corporation, testified that in the 1947-1948 season, in checking the records of plaintiff, he found that 79 bales of cotton were missing, including one lot of 29 bales; that he was never able to check the 29 bales or determine what final disposition was made of them.

G. L. Hammond, plaintiff's plant superintendent at Corcoran, testified that in the latter part of December, 1948, he received notice that 29 bales of cotton were missing; that there were other bales of cotton missing and he had a list of it, but not a list of the 29 bales; that he obtained a copy of the shipping order delivered by Simpkins to the trucking firm and checked the list on it with the bale books, yard books and bale receipts of plaintiff and that the numbers did not correspond; that the numbers on this shipping receipt contained the numbers on cancelled bale tags belonging to the plaintiff and that he checked the weight of the bales thereon shown as against the 29 missing and found that they were identical in weight.

W. C. Runkle, an employee of plaintiff in its cotton department, testified that the records of plaintiff showed that the 29 missing bales had been shipped on an order going to Los Angeles but that they did not arrive there and that these bales were checked off by Stuart as having been shipped.

There is testimony in the record indicating that the missing cotton, according to plaintiff's records, was of a different classification and color than that purchased by Simpkins and sold to Felder and Company.

Before the commencement of the instant action, the Indemnity Insurance Company of North America issued a fidelity bond in favor of plaintiff covering the misappropriations and wrongdoings of its employees. Stuart was an employee of the plaintiff and was covered by the bond. After the execution of the bond and before the commencement of this action, plaintiff made a demand on the indemnity company for payment of its loss for 29 bales of cotton and the sum of $4,919.94 was paid to the plaintiff therefor. This amount was entered on plaintiff's books as payment of plaintiff's claim for damages and a written agreement was entered into as follows:

"Los Angeles, California, May 27, 1949.

"J. G. Boswell Company hereby acknowledges that it has borrowed and received from Indemnity Insurance Company of North America the sum of $4,919.94 as a loan, repayable only out of any net recovery J. G. Boswell Company may make from any person, firm, bank, corporation, co-partnership or any source, causing or liable for the loss or damage to Boswell to the extent of said $4,919.94, arising out of or in connection with loss claimed to have been sustained by J. G.

BOSWELL COMPANY due to certain individuals, corporations, or co-partnerships, or other persons having stolen, embezzled, misappropriated, or converted to their own use Twenty-nine (29) bales of certain cotton, the property of J. G. BOSWELL COMPANY.

"INDEMNITY INSURANCE COMPANY OF NORTH AMERICA is obligated to pay to said J. G. BOSWELL COMPANY said loss on account of a certain fidelity bond executed by INDEMNITY INSURANCE COMPANY OF NORTH AMERICA in favor of J. G. BOSWELL COMPANY, and INDEMNITY INSURANCE COMPANY OF NORTH AMERICA contends that said J. G. BOSWELL COMPANY has not established the fact the INDEMNITY INSURANCE COMPANY OF NORTH AMERICA is liable to said J. G. BOSWELL COMPANY under the terms of said fidelity bond.

"AND as security for such repayment, J. G. BOSWELL COMPANY does hereby pledge to the said INDEMNITY INSURANCE COMPANY OF NORTH AMERICA any such recovery as it may make, and agrees to enter and prosecute suit against any person, firm, bank, corporation, co-partnership or source, at the expense and under the direction and control of said INDEMNITY INSURANCE COMPANY OF NORTH AMERICA.

J. G. BOSWELL COMPANY

By REG ROBINSON,
Secretary.

Acknowledgment.

Notary Seal.''

It is plaintiff's contention that the payment made was a loan and did not defeat its cause of action. This contention is without merit. It is apparent that the instant action was brought under the doctrine of subrogation for and on behalf of the indemnity company but in the name of the plaintiff. The right of subrogation is equitable in nature and can be invoked only in cases in which justice demands its application and the right of one asking subrogation must have a greater equity than those who oppose him. The doctrine of subrogation is called into play only when it is necessary to bring about an equitable adjustment between the parties. (*Meyers* v. *Bank of America,* 11 Cal.2d 92, 98-99 [77 P.2d 1084].) In that case it was said, at page 96, quoting from *American Surety Co. of N. Y.* v. *Lewis State Bank,* 58 F.2d 559:

" '. . . It (subrogation) is properly applied in favor of a surety on a fidelity bond only against persons who have

participated in the wrong of its principal. . . . It is never applied against an innocent person wronged by the principal's fraud.' "

And quoting from *Northern Trust Co.* v. *Consolidated Elevator Co.,* 142 Minn. 132 [171 N.W. 265, 4 A.L.R. 510], on page 99:

" 'When it is sought to enforce the right (of subrogation) something more must be shown than that defendant could have been compelled by the original creditor to pay the debt. While a surety may assert the right against one with whom he had no contractual relations, it must appear that the defendant participated, with notice, in the illegal act of the principal which served to bring about the loss. The right to recover from a third person does not stand on the same footing as the right to recover from the principal. As to the latter, the right is absolute—as to the former it is conditional.' "

The court further said, at pages 101-102, quoting from *First & Tri State Nat. Bank* v. *Massachusetts Bonding & Ins. Co.,* 102 Ind.App. 361 [200 N.E. 449]:

" 'The doctrine of (subrogation) has been applied most frequently in the courts to certain types of insurance cases. It has with almost unanimity been held not to apply in favor of a surety on a fidelity bond, except only against persons who participated in the wrongful act of the wrongdoer.' " (Citing cases.)

██ In the instant case the uncontradicted evidence before us shows that defendants Simpkins and Felder and Company were innocent purchasers for value of 29 bales of cotton and did not participate in any manner whatsoever in the alleged theft or misappropriation thereof by Stuart; that both Simpkins and Felder and Company purchased the cotton in the ordinary course of trade and had no knowledge of the misappropriation by Stuart or that the plaintiff had or claimed any interest whatsoever in the cotton which they purchased. Under these circumstances, it cannot be said that the indemnity company had a right of subrogation except as to defendant Stuart. As between the defendants Simpkins and Felder and Company, who acted in good faith, and the indemnity company, which, for compensation, undertook to be responsible for Stuart's misappropriations and wrongs, the equities in favor of the indemnity company cannot be said to be greater than those of the defendants.

In *American Etc. Ins. Co.* v. *Capital Nat. Bank,* 75 Cal.App. 2d 787 [171 P.2d 449], plaintiff appealed from a summary

judgment in a suit against the Capital National Bank of Sacramento for damages sustained as a result of having paid several fraudulent drafts presented by an agent and employee of plaintiff, upon which the agent had forged the names of the payees and appropriated the proceeds to his own use. The names of the payees were certified by the agent of plaintiff as genuine. The plaintiff was insured against the dishonest conduct of its agent by a surety company, which was not a party to the action. Upon demand, the surety company paid plaintiff the amount of its losses before commencement of suit. Plaintiff then brought suit against the bank for wrongfully paying the forged drafts. The court held that since the plaintiff had been fully compensated for its loss, it could not maintain the suit in its own behalf for to do so would result in plaintiff's receiving double pay for its losses, and that it could not maintain the action in behalf of the surety company, the indemnitor of plaintiff, since it was not entitled to be subrogated to the rights of the plaintiff. The court there said, at page 796:

"In several New York cases, wherein the liability of insurers was absolute, as it was in the present case, in construing language of asserted loan receipts similar to the one here involved, it was held that the receipt of losses from the insurer where there were no provisions for repayment of the moneys *except upon condition that it be recovered from other parties,* and neither interest nor security for the asserted debts were provided for, they constituted payments of the liabilities and not mere loans, in spite of recitals in the written receipts that they were intended as mere loans of money." (Citing cases.)

In the case of *Heuer* v. *Truck Ins. Exch.,* 51 Cal.App.2d 497, 504 [125 P.2d 90], the court said, citing from New York cases:

"Both cases involved facts showing that the insurer's liability to the insured was absolute and that the so-called loan transactions were mere subterfuges. In the Yezek case [176 Misc. 553 (28 N.Y.S.2d 966)], the court distinguished numerous cases in which transactions had been upheld as loan transactions and said at page 37, 'In the latter class, of which the present case is one, the insurer's liability to the insured is *absolute* when the loss occurs. . . . The insured is entitled to prompt payment without resort to a loan. The transaction

is held to be a payment.' And on the same page the court quoted from *Kalle & Co., Inc.* v. *Morton,* 156 App.Div. 522, 524 [141 N.Y.Supp. 374], as follows: 'If it be true, as indicated, that the policy could not have been enforced, then the insurance company had a right to exact such terms . . . as it chose as a condition of payment.' "

The evidence shows that the plaintiff placed defendant Stuart in a position to commit the alleged conversion of the cotton here involved. Stuart was at all times the shipping clerk of plaintiff, had access to all the records, was permitted to sell cotton from plaintiff's yard and to retain for his own use loose cotton which he was permitted to sell in the usual channels of the cotton trade. ■ Where, as here, an owner clothes another with the apparent title to or power of disposition over property, and an innocent third party has thereby been induced to deal with the apparent owner in reference thereto, the true owner is estopped from afterward asserting his title. (24 Cal.Jur., p. 1029.)

■ As was said in *Phelps* v. *American Mortgage Co.,* 40 Cal.App.2d 361, 366 [104 P.2d 880]:

". . . where an owner deposits his property with another and gives the depository such *indicia* of ownership that a reasonable man dealing with such agent is reasonably led to believe the agent is the owner of such property and parts with value in reliance thereon, the third person will be protected even though the true owner is guilty of no more than misplaced confidence."

■ Moreover, the defendants are protected by the rule set forth in section 3543 of the Civil Code: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." This rule has been applied to bona fide purchasers for value from those who have been clothed with the *indicia* of ownership. (*Meadows* v. *Hampton Live Stock Com. Co.,* 55 Cal.App.2d 634, 636 [131 P.2d 591].) And in *Brown* v. *Oxtoby,* 45 Cal.App.2d 702, 708 [114 P.2d 622], it is said:

"Although the principal may not have actually authorized the particular fraudulent act, yet the principal is responsible for the fraud of the agent if he has entrusted to the agent a matter which puts the agent in a position to perpetrate the fraud complained of, while the agent is executing the agency transaction within the scope of his employment."

Plaintiff complains that the court erroneously instructed the jury in several particulars, principally in the instruction which is as follows:

"You are instructed that as a matter of law, the Indemnity Insurance Company of North America was obligated to pay the plaintiff J. G. Boswell Company under its fidelity bond for the dishonesty, misappropriation or wrong doing of the said W. L. Stuart, and I instruct you that if you find from the preponderance of the evidence that the said W. L. Stuart stole or misappropriated the 29 bales of cotton in issue and the said Indemnity Insurance Company, under its fidelity bond, paid the said plaintiff J. G. Boswell Company the sum of $4,919.94 for the said alleged theft or misappropriation of said cotton and that said defendant B. H. Simpkins did not participate nor had he any knowledge of said theft or misappropriation nor had he any knowledge that said cotton belonged to the said plaintiff J. G. Boswell Company, and that he had acted as a reasonable, prudent man, exercising due care and caution, then I instruct you that plaintiff has been paid for said cotton and you are instructed to return your verdict in favor of the defendant, B. H. Simpkins."

We find no error in the instruction when viewed in the light of what we have heretofore said relative to subrogation and payment by the Indemnity Insurance Company. We have examined the other instructions to which objection was made and find no reversible error in them and conclude that the court was correct, in view of the evidence, in instructing the jury to return a verdict in favor of the defendant W. D. Felder and Company, and that there was sufficient evidence in the record to support the jury's finding in favor of defendant Simpkins.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1951.