[Civ. No. 21868. Second Dist., Div. Three. Mar. 25, 1957.]

LIBERTY MUTUAL INSURANCE COMPANY (a Corporation), Appellant, v. SAMUEL KLEINMAN et al. Respondents.

Virgil R. Wells and Stegman & Stegman for Appellant.

Jerome Weber and David Hoffman for Respondents.

SHINN, P. J.—Liberty Mutual insured Dietzgen Company against loss suffered through the dishonesty of its employees. Los Angeles Blue-Print Company, a subsidiary of Dietzgen Company, was covered by the policy. Leon Tanner Eddy, manager of Blue-Print, took 80 checks payable to his employer, stamped the employer's endorsement, added his name as manager, cashed the checks and appropriated the proceeds to his own use, in the total amount of $7,446.19. Plaintiff paid this amount under its policy. Defendants Kleinman and Hertzberg cashed 54 of the checks in the total amount of $4,556.51 and the present action against Kleinman and Hertzberg is by the insurer, claiming as subrogee of Blue-Print. At the conclusion of the trial the court made findings in favor of plaintiff and entered judgment in its favor. Upon motion for a new trial the court vacated the findings and conclusions, made new ones, and entered judgment for defendants. Plaintiff appeals.

There was no conflict in the evidence and there appears to be no doubt as to the applicable legal principles. It was held in *Meyers* v. *Bank of America*, 11 Cal.2d 92, 102 [77 P.2d 1084], that the right of subrogation does not exist in favor of a surety on a fidelity bond except against persons who participated in the wrongful act against the surety's principal; the right of the surety to recover from a third party is governed by equitable principles and there can be no recovery unless the equities in favor of the surety are superior. (In accord *J. G. Boswell Co.* v. *W. D. Felder & Co.*, 103 Cal.App.2d 767 [230 P.2d 386].) The factual issue at the trial was whether defendants were guilty of negligence. The complaint alleged that defendants knew or should have known that Eddy had no authority to cash the checks. This was treated as a sufficient allegation of negligence and was denied by the answer. The court found the allegation to be untrue. The finding is assailed as being without support in the evidence.

When we are urged to hold that a material finding is unsupported by the evidence we look to the opening brief of the appellant expecting to find a statement of the evidence bearing upon the issue. There is no statement in either of appellant's briefs as to the relations between Eddy and defendants over a period of more than three years nor as to the circumstances under which defendants cashed the checks. However, the facts are simple and we have decided to consider the point, notwithstanding the failure of counsel to obey the rule.

For some nine years Eddy served as manager of Blue-Print under appointment by Dietzgen, using cards furnished him which designated him as manager. He was manager in fact as well as in name and had full control over all normal operations. His maximum salary was $325 per month. In 1950 he became a customer of defendants' liquor store. He made purchases at least once a week for several years and was extended credit. He was generally known about the store as the manager of Blue-Print. He introduced other employees to defendants, paid his bills regularly and came to be regarded as a responsible business man. In 1951, after he had been a customer of the store for a year, he cashed the first of the checks that were payable to Blue-Print. During the ensuing 27 months he cashed 53 other checks with defendants, receiving the full amounts in money and merchandise. Defendants did not question his authority or make any inquiry of his employer. All the 80 or more checks cleared without incident.

If defendants had knowledge of any facts which made it their duty, in the exercise of ordinary care, to make inquiry of Blue-Print, they were chargeable with knowledge of Eddy's want of authority to negotiate the checks. We do not doubt that there is reason to suspect the authority of an agent who endorses his principal's name upon checks, by himself as agent, and openly cashes them for his own use. The principal is not bound unless the agent has acted within his actual authority. (Civ. Code, § 3102.) This, however, is not the question. Blue-Print sustained the loss, has received indemnity, and the crucial question on the appeal is whether it appears, as a matter of law, that defendants were guilty of negligence. Defendants' transactions with Eddy were irregular, to say the least. Evidently defendants did not think so. They saw nothing wrong or even suspicious in Eddy's practice of cashing checks that were payable to his company. They asked him no questions and he told them nothing. While we would find it difficult to reconcile defendants' methods with the use of ordinary business judgment, we do not believe the court was required to find defendants guilty of negligence. Mr. Eddy inspired confidence in many people other than defendants. His employer did not suspect him or make a check of his records. Apparently no one doubted his honesty. Defendants had done business with him for more than a year before he cashed the first check. Hertzberg testified "we knew him that he is a good nice man . . . he pays his debts all the time before, since he was taking stuff on credit he always did pay . . ." and Kleinman testified "we had known Mr. Eddy for a radius of a year before he had ever asked to be issued credit." It took Blue-Print 27 months to discover Eddy's defalcations although a simple audit would have disclosed them.

In its first findings the court did not make a finding whether defendants were negligent. Upon motion for new trial, as we have stated, the court found that defendants were not negligent. The court also found that Blue-Print was negligent "in not checking or auditing defendant Leon Tanner Eddy, and permitting the misappropriation of checks to continue over a period of 27 months." It also found that Blue-Print employed Eddy as its manager and "by said act, created an actual agency" and caused Eddy "to believe himself to possess an actual authority," and "by want of ordinary care, caused defendants to believe that defendant, Leon Tanner Eddy, was an agent of the Los Angeles Blue-Print Company

and clothed the said Leon Tanner Eddy with ostensible authority. That by want of ordinary care, the Los Angeles Blue-Print Company caused or allowed the defendants to believe that the said Leon Tanner Eddy possessed an ostensible authority.'' We are at a loss to know what these findings mean. If they should be construed as findings that Blue-Print was estopped to question the authority of Eddy to cash the checks we would seriously question the sufficiency of the evidence to support them. Defendants sought leave to amend their answer to plead estoppel and although permission was granted they did not amend their answer and the court did not make a finding or draw a conclusion that Blue-Print was estopped to question the authority of Eddy. We do not construe the findings to mean that Blue-Print was estopped to question the authority of Eddy. There are elements of the doctrine of estoppel that were not pleaded or considered to be in issue and which were not touched upon in the evidence. We shall not digress to enumerate them.

Although defendants made repeated efforts to prove that Blue-Print did not cause an audit to be made of Eddy's accounts, they were prevented from proving that fact by plaintiff's objections, which were sustained. It nevertheless appeared without question that Eddy's defalcations continued over a period of 27 months before they were discovered. The court could properly have inferred that Blue-Print had no system of auditing Eddy's accounts or checking upon his activities, and that if the accounts had been audited the defalcations would have been detected at an early date. In the balancing of the equities as between plaintiff and defendants the question of defendants' negligence was the critical one. The fact that for 27 months the checks cashed by defendants cleared without incident was a circumstance of considerable weight in the decision of that question. And it was a fact which defendants would naturally take into consideration whether it came about by reason of Blue-Print's negligence or despite the use of diligence. We, therefore, construe the findings to mean that the failure of Blue-Print to discover the defalcations was one of the reasons for the confidence defendants reposed in the integrity of Eddy. We, therefore, attach no importance to the finding that Blue-Print was negligent.

Our conclusion is that the question of defendants' negligence was one of fact as to which the determination of the trial court is based upon reasonable inferences and that the finding is controlling upon appeal. The court concluded

that the equities favoring defendants were superior to those favoring plaintiff and, upon the facts found, we agree.

We have limited our discussion of the principles of subrogation to the issues that were tried and the points argued in the briefs.

There are several findings which, if taken literally, would be absurd. Among them was a finding that the action was barred by the statute of limitations. They are contrary to other specific findings, to admissions of the pleadings and to the evidence. Errors of this sort are frequently found when broad findings are made by reference to the pleadings. We must attribute the conflicts and inconsistencies in the present findings to carelessness of the author and inadvertence on the part of the court.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied April 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1957.