[Civ. No. 20476.   First Dist., Div. Two.   Jan. 18, 1963.]

ROYAL INDEMNITY COMPANY, Plaintiff and Appellant, v. SECURITY TRUCK LINES, Defendant and Respondent.

Robert M. Cole for Plaintiff and Appellant.

Rankin, Oneal, Luckhardt & Center and J. E. Longinotti for Defendant and Respondent.

KAUFMAN, P. J.—Appellant, Royal Indemnity Company, an insurance carrier, brought action against the respondent, Security Truck Lines (hereafter referred to as Security), to recover moneys paid by appellant to its insured, General Petroleum Corporation (hereafter referred to as General Petroleum), for the replacement of a sign at a gasoline service station located on U.S. Highway 101 in Laytonville, California. The complaint alleged that on May 4, 1957, the sign at General Petroleum's Laytonville station was irreparably damaged by a truck owned by the respondent and operated by its employee, George A. Clark. The replacement cost of $966.61 was paid by the appellant pursuant to its contract of insurance with General Petroleum.

Respondent's answer alleged a counterclaim of $3,000 owed by General Petroleum's wrongful removal of a sign at a service station at 1600 South First Street, San Jose, California, which General Petroleum had leased from the respond-

ent.   Appellant challenged the counterclaim by demurrer and by a motion to strike.   The trial court sustained respondent's right to assert the counterclaim.   Thereafter, the appellant entered into a written stipulation acknowledging the verity of the counterclaim and authorizing judgment to be entered accordingly and preserving its right to appeal.   The trial court accordingly entered its judgment that appellant was entitled to its judgment against Security and that Security was entitled to a setoff against the judgment in its entirety.

The only question presented by this appeal is whether the trial court properly allowed the respondent's counterclaim. Appellant contends that the trial court erred because: (1) The insured, General Petroleum, was not a party to this action; (2) The counterclaim is entirely unrelated to the instant action; (3) The facts alleged do not sufficiently state a counterclaim; and (4) The counterclaim cannot be asserted against the appellant as the subrogee of General Petroleum.

██  Sections 437 and 438 of the Code of Civil Procedure, as amended in 1927, provide that the defendant may, in his answer, set up new matters as a counterclaim.   The only requirements for a counterclaim are that it "must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action. . . ."  (Code Civ. Proc., § 438.)    ██    Since 1927, the scope of a counterclaim is broader than that of a cross-complaint.   As long as the counterclaim fulfills the requisites of diminishing plaintiff's recovery and involves only the parties to the action, the cause of action set up in the counterclaim need have no relation to the plaintiff's cause of action.    ██    In the leading case (*Terry Trading Corp.* v. *Barsky*, 210 Cal. 428, 435-436 [292 P. 474]), the Supreme Court said: "All of the other limitations were abolished by this amendment, and an intent on the part of the legislature to avoid multiplicity of suits and to have all conflicting claims between the parties settled in a single action was most clearly manifested . . . it is not necessary that there be any connection between the cause of action set up in the complaint and that which forms the basis of the counterclaim."  (See also *Bond* v. *Farmers etc. Bank*, 64 Cal.App.2d 842, 845 [149 P.2d 722]; *Buckman* v. *Tucker*, 9 Cal.2d 403, 408 [71 P.2d 69]; *Casaretto* v. *DeLucchi*, 76 Cal.App.2d 800, 807 [174 P.2d 328]; 16 Cal.L.Rev. 365; 10 So.Cal.L.Rev. 420, 439; 18 Cal.L.Rev. 479.)   Thus, there is no merit in appellant's contentions on this point.

We turn now to the contention that the respondent's counterclaim against General Petroleum cannot be asserted against the appellant. Appellant contends that it is not an assignee of the rights of General Petroleum, but that General Petroleum is a fiduciary and trustee of a constructive trust on its behalf. However, it has long been held that subrogation is the equivalent of an equitable assignment (*Dibble* v. *San Joaquin L. & P. Corp.*, 47 Cal.App. 112 [190 P. 198]).

In *Offer* v. *Superior Court*, 194 Cal. 114 [228 P. 11], our Supreme Court said at page 119: "The development of subrogation is closely analogous to several other modes of remedy. The question often arises whether one who has suffered by being held liable for the tort or breach of contract of another should seek his remedy by an action founded on an express promise of indemnity, if such there was, or on the implied assumpsit raised by his payment of the obligation of the other, or upon the theory of subrogation. In some cases the claimant may have taken an assignment of the demand he has paid; he may have an express contract of indemnity, or an implied *assumpsit* to rest upon, and yet, perhaps, may have an election to proceed on the theory of subrogation, 'which is a sort of assignment by operation of equity.' This doctrine of subrogation having grown up out of the doctrine of assignment of causes of action it may be well to trace the progress of the latter."

Recently, in *Fifield Manor* v. *Finston*, 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073] at page 640, the court pointed out that: "While subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of such causes of action by subrogation. This court said in *Offer* v. *Superior Court*, 194 Cal. 114, 121 [228 P. 11], in upholding a right of subrogation in a case of damage to property: 'Section 954 of the Civil Code provides that "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." It is clear that in the case at bar the cause of action of the insured arose out of the violation of a right of property and such right of action, or thing in action, is declared by the above code section to be assignable. In *Dibble* v. *San Joaquin L. & P. Corp.*, 47 Cal.App. 112, 117 [190 P. 198], the court held that the insurer merely had a cause of action

arising by way of subrogation or equitable assignment which is declared to be an assignment by operation of law. If the right of the insured is assigned to the insurer by operation of law there is no necessity to go into equity to establish that right.'

"Conversely in the earlier development of the law, assignment was regarded as one form of subrogation. (*Branham* v. *Mayor & Common Council of San Jose*, 24 Cal. 585, 607.) Whether the transfer be technically called assignment or subrogation or equitable assignment or assignment by operation of law its ultimate effect is the same, to pass the title to a cause of action from one person to another."

It is well established in this state that a counterclaim may be set up against an assignee (44 Cal.Jur.2d § 8, p. 616; *Cohen* v. *Bonnell*, 14 Cal.App.2d 38 [57 P.2d 1326]; *Harry Hall & Co.* v. *Consolidated Packing Co.*, 55 Cal.App.2d 651 [131 P.2d 859]). The rule is that the counterclaim only need be in existence and owned by the defendant at the time of the assignment provided it has matured at the time it is pleaded (*St. Louis Nat. Bank* v. *Gay*, 101 Cal. 286, 290 [35 P. 876]; 2 Witkin, Cal. Procedure, Pleading, § 584, p. 1595). Furthermore, a defendant may set up a claim against the assignor as a counterclaim against the assignee-plaintiff, providing the claim was acquired by the defendant prior to notice of the assignment even though acquired after the assignment (*Coonan* v. *Loewenthal*, 147 Cal. 218 [81 P. 527, 109 Am. St.Rep. 128]; *St. Louis Nat. Bank* v. *Gay, supra*). The pleadings here allege that the wrongful removal of Security's sign in San Jose by General Petroleum occurred in "early 1957"; the damage by Security's truck to General Petroleum's sign in Laytonville occurred on May 4, 1957. The record here is silent as to when notice was given, but in view of the stipulations of the parties, we assume that Security's claim in the San Jose matter was acquired prior to notice of the subrogation of appellant to General Petroleum's rights in the Laytonville matter.

Thus, if the action had been brought by General Petroleum, there is no question that the respondent would have been able to assert its counterclaim. It is the universal rule that an insurer who has indemnified his insured for a property loss is subrogated to the insured's right against any person wrongfully causing the loss. This is true whether the insured's cause of action is in tort or contract (*In re Future*

*Manufacturing Cooperative, Inc.* (N.D. Cal. 1958) 165 F.Supp. 111, 113). ■■■ Any defense which the wrong-doer has against the insured is good against the insurer (*Royal Indemnity Co.* v. *Federal Reserve Bank of Cleveland* (D.C. Ohio 1939) 38 F.Supp. 621, affd. (6th Cir.) 119 F.2d 778; 29A Am.Jur. §§ 1719-1722).

There appears to be no reason why the appellant, as the equitable assignee or subrogee of General Petroleum, should not be subject to the same right of counterclaim by the respondent. In the absence of equitable considerations which would militate against the subrogee or equitable assignee, the right attained is the same as that held by the subrogor or equitable assignor and is subject to the same qualifications, limitations and burdens (29A Am.Jur. § 1720; cf. *Meyers* v. *Bank of America,* 11 Cal.2d 92 [77 P.2d 1084]).

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.