[Civ. No. 30131.  Second Dist., Div. Five.  Nov. 29, 1967.]

PATENT SCAFFOLDING CO., Plaintiff and Respondent, v. WILLIAM SIMPSON CONSTRUCTION COMPANY, Defendant and Appellant.

Hill, Farrer & Burrill, William McD. Miller, A. J. Cathcart and William M. Bitting for Defendant and Appellant.

Joseph Stell and Arthur S. Levin for Plaintiff and Respondent.

HUFSTEDLER, J.—The William Simpson Construction Company ("Simpson") appeals from a judgment in favor of The Patent Scaffolding Co. ("Patent") awarding to Patent judgment for $16,481.09, with interest and costs.

*Procedural and Factual Summary*

Three insurance companies, United States Fidelity and Guaranty Company, Niagara Fire Insurance Company, and National Fire Insurance Company ("insurers"), brought the action in the name of their insured, Patent, against Simpson

and California Institute of Technology ("Caltech") to recover damages for claimed breach of a contract between Patent and Simpson and of a contract between Simpson and Caltech of which Patent claimed to be a third party beneficiary.

Simpson, a general contractor, executed a contract with Caltech to construct a building for Caltech. Simpson entered into a subcontract with Patent whereby Patent was to furnish scaffolding and other equipment for use during construction of the building, to erect the scaffolding and equipment at the job site, and to remove such materials when the job was completed. The written contract, dated November 20, 1959, between Patent and Simpson contained the following paragraph:

"15. FIRE INSURANCE—Subcontractor's work and materials at the site of the project are to be protected from fire loss and damage by insurance procured by the contractor or the owner, without cost to the subcontractor."

During the course of construction a fire of unknown origin destroyed certain items of Patent's equipment and materials at the job site. Prior to the commencement of the action Patent demanded $16,481.09 from Simpson and Caltech to compensate it for its fire loss. Neither Simpson nor Caltech paid Patent for its loss. Simpson did not procure insurance protecting Patent's equipment and materials from fire loss and it did not request or cause Caltech to procure fire insurance upon Patent's materials and equipment.

Prior to Patent's executing the subcontract with Simpson, Patent had procured from the insurers fire insurance on the materials and equipment damaged and destroyed by the fire. The insurers' policies together provided coverage of over $1,000,000 to Patent against loss of its property.

Patent made claims on each of the insurers and the insurers paid Patent the following amounts of money: United States Fidelity and Guaranty and Niagara Fire Insurance Companies paid Patent $5,768.38 each, and National Fire Insurance Company paid $4,944.33, the total of which equaled $16,481.09.

The trial court concluded (1) the insurers were subrogated to Patent's claim upon its contract with Simpson; (2) the insurers were entitled to recover the total sums paid to Patent; (3) the contract between Simpson and Patent was "not a contract merely to obtain fire insurance, but a contract

of indemnification against fire loss''; (4) the insurers were not entitled to recover against Caltech, because Patent was not a third party beneficiary of the contract between Simpson and Caltech. Judgment was accordingly entered in favor of the nominal plaintiff, Patent, against Simpson, and in favor of Caltech against Patent. No appeal has been taken from that portion of the judgment in favor of Caltech.

The appeal presents the novel question: Are the insurers who compensated Patent for Patent's fire loss equitably subrogated to Patent's cause of action against Simpson for breach of Simpson's contractual duty either to indemnify Patent for fire loss or to procure fire insurance for Patent's benefit?

### Equitable Subrogation Elements

The elements of an insurer's cause of action based upon equitable subrogation are these: (1) The insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable. (*Meyers* v. *Bank of America Nat. Trust & Sav. Assn.* (1938) 11 Cal.2d 92 [77 P.2d 1084]; *Offer* v. *Superior Court* (1924) 194 Cal. 114 [228 P. 11]; *Liberty Mut. Ins. Co.* v. *Kleinman* (1954) 149 Cal.App.2d 404 [308 P.2d 347]; *American Alliance Ins. Co.* v. *Capital Nat. Bank* (1946) 75 Cal.App.2d 787 [171 P.2d 449]; *Harrington* v. *Central States Fire Ins. Co.* (1934) 169 Okla. 255 [36 P.2d 738, 96 A.L.R. 859]; *In re Future Mfg. Coop., Inc.* (N.D. Cal. 1958) 165 F.Supp. 111. See also Justice Traynor's dissenting opinion, *Anheuser-Busch, Inc.* v. *Starley*

(1946) 28 Cal.2d 347, 355-356 [170 P.2d 448, 166 A.L.R. 198].)

No express assignment of the insured's cause of action is required; equitable subrogation is accomplished by operation of law. However, as in cases of assignment, the equitable subrogee is substituted only in respect of a subrogor's causes of action which are not purely personal and, generally, any defenses or counterclaims which could have been asserted against the subrogor-insured can also be asserted against the subrogee-insurer. (*Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 351 [170 P.2d 448, 166 A.L.R. 198]; *Royal Indem. Co.* v. *Security Truck Lines* (1963) 212 Cal.App.2d 61, 65-66 [27 Cal.Rptr. 858]; see also *Meyers* v. *Bank of America Nat. Trust & Sav. Assn., supra,* 11 Cal.2d at p. 94.)

### Subrogor's Cause of Action

If Patent had had no insurance to compensate it for its loss, Patent could have recovered damages from Simpson for all detriment proximately caused by Simpson's breach of its contractual duty to indemnify or to procure insurance. (Civ. Code, § 3300; see *Dutton Dredge Co.* v. *United States Fid. & Guar. Co.* (1934) 136 Cal.App. 574, 581 [29 P.2d 316]; see also *Transportation Guar. Co., Ltd.* v. *Jellins* (1946) 29 Cal.2d 242, 252-253 [174 P.2d 625].)

After Patent was fully compensated for its fire loss, however, could Patent itself have successfully sued Simpson for breach of contract? Patent could recover twice for the same loss only if the "collateral source" rule applies. "When an injured party receives compensation for his losses from a collateral source 'wholly independent of the tortfeasor,' such payment generally does not preclude or reduce the damages to which it is entitled from the wrongdoer. (See *Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 349-350 [170 P.2d 448, 166 A.L.R. 198]; see also *Lewis* v. *County of Contra Costa* (1955) 130 Cal.App.2d 176, 178 [278 P.2d 756].)" *City of Salinas* v. *Souza & McCue Constr. Co., Inc.* (1967) 66 Cal.2d 217, 226 [57 Cal.Rptr. 337, 424 P.2d 921].) Thus, if Patent sued a person whose negligent or willful act caused the fire which destroyed its property, Patent's compensation from its insurers would neither diminish nor defeat the damages which it could recover from the tortfeasor. (*E.g., City of Salinas* v. *Souza & McCue Constr. Co., Inc., supra,* 66 Cal.2d 226-227; Maxwell, *The Collateral Source Rule in the*

*American Law of Damages* (1962) 46 Minn.L.Rev. 669;
Fleming, *The Collateral Source Rule and Loss Allocation in
Tort Law* (1966) 54 Cal.L.Rev. 1478.)

The collateral source rule, however, has not been generally
applied in cases founded upon breach of contract, unless the
"breach has a tortious or wilful flavor." (*City of Salinas* v.
*Souza & McCue Constr. Co., Inc., supra,* 66 Cal.2d at p.
227; *United Protective Workers* v. *Ford Motor Co.* (7th Cir.
1955) 223 F.2d 49, 54 [48 A.L.R.2d 1285].) The collateral
source rule is punitive; contractual damages are compensa-
tory. The collateral source rule, if applied to an action based
on breach of contract, would violate the contractual damage
rule that no one shall profit more from the breach of an obli-
gation than from its full performance. An application of the
collateral source rule is particularly indefensible in a situa-
tion in which the injured party potentially could make a
treble recovery: one from his insurer, one from a defendant
who has undertaken contractual liability for the loss, and one
from the wrongdoer. (See Justice Traynor's dissenting
opinion in *Anheuser Busch, Inc.* v. *Starley, supra,* 28 Cal.2d
at pp. 355-356.) We conclude that the collateral source rule
would be inapplicable in an action brought by Patent for its
own benefit after Patent had been paid by the insurers.

Patent suffered no uncompensated detriment caused by
Simpson's breach of contract. It was fully paid for its fire
loss. It could not recover the cost of the premiums it had paid
to the insurers because it did not incur that expense as a
consequence of its contract with Simpson or as a result of
Simpson's breach of contract. A breach of contract without
damage is not actionable. (*E.g., Hawkins* v. *Oakland Title
Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 122 [331 P.2d
742].) Damages are not recoverable which are not causally
connected with the breach of a contract. (Civ. Code, § 3300;
*Southall* v. *Security Title Ins. etc. Co.* (1952) 112 Cal.App.2d
321, 323-324 [246 P.2d 74].)

*Insurers' Equitable Subrogation*

The fact alone that Patent could not recover from
Simpson because Patent suffered no loss does not defeat the
insurers' subrogation rights. The insurers' loss can be substi-
tuted for Patent's if the insurers' loss was proximately
caused by the act or omission of Simpson or one for whose
acts or omissions Simpson was vicariously liable. The most

common subrogation action is one brought on behalf of an insurer against a wrongdoer whose wrong caused the loss. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 429 [296 P.2d 801, 57 A.L.R.2d 914]; *Offer* v. *Superior Court, supra,* 194 Cal. 114; *Royal Indem. Co.* v. *Security Truck Lines, supra,* 212 Cal.App.2d 61.) Liability of the wrongdoer may, of course, be based not only on a tort, but also upon a breach of contract (*e.g., Eads* v. *Marks* (1952) 39 Cal.2d 807 [249 P.2d 257]; *Chelini* v. *Nieri* (1948) 32 Cal.2d 480 [196 P.2d 915]) so long as there exists the necessary causal relationship between the wrong and the damage. (*Cf. City of Salinas* v. *Souza & McCue Constr. Co., Inc., supra,* 66 Cal.2d at p. 228.)

The insurers' loss was not caused by Simpson's failure to get insurance or to indemnify Patent. The insurers' loss was caused by the fire, the very risk which each assumed, and Simspon's failure to perform its contractual duty had nothing to do with the fire.

The California cases, with one exception, have not permitted equitable subrogation to insurers whose losses are not causally related to a breach of duty for which the party to be charged may be liable to the insured for a loss compensated by the insurers.

The leading California case is *Meyers* v. *Bank of America Nat. Trust & Sav. Assn., supra,* 11 Cal.2d 92. The nominal plaintiff, Meyers, employed an office manager, who forged Meyers' name upon checks payable to Meyers, negotiated the checks to defendant Wascher, who paid full value therefor. The manager converted the proceeds to his own use. Wascher deposited the checks in his bank account with the defendant bank, which thereafter presented them to the respective drawee banks and received full payment for them. The insurance company prosecuting the action in Meyers' name had executed a fidelity bond indemnifying Meyers against all loss which might result from the wrongful acts of Meyers' office manager. When the office manager's dishonesty was discovered, the insurance company reimbursed Meyers for the loss and commenced this action against Wascher's bank. The Supreme Court reversed judgment in favor of the nominal plaintiff, holding that the insurance company was not equitably subrogated to Meyers' collateral cause of action.

The court concluded: ''Here, the indemnitor has discharged its primary contract liability. It has paid what it contracted

to pay, and has retained to its own use the premiums and benefits of such contracts. It now seeks to recover from the bank the amount thus paid. It must be conceded that the bank is an innocent third party, whose duty to the employer was based upon an entirely different theory of contract, with which the indemnitor was not in privity. Neither the indemnitor nor the bank was the wrongdoer, but by independent contract obligation each was liable to the employer. In equity, it cannot be said that the satisfaction by the bonding company of its primary liability should entitle it to recover against the bank upon a totally different liability." (11 Cal.2d at 102.) (Accord: *Liberty Mut. Ins. Co.* v. *Kleinman, supra,* 149 Cal. App.2d 404; *J. G. Boswell Co.* v. *W. D. Felder & Co.* (1951) 103 Cal.App.2d 767 [230 P.2d 386]; and *American Alliance Ins. Co.* v. *Capital Nat. Bank, supra,* 75 Cal.App.2d at pp. 791-794.)

The court in *Meyers* relied upon a case which provides an even closer analogy to the facts in our case. In *New York Title & Mortg. Co.* v. *First Nat. Bank* (8th Cir. 1931) 51 F.2d 485 [77 A.L.R. 1052], a loan broker, through forgeries and misrepresentations, procured title insurance policies by which a loan association was guaranteed against loss by reason of defects in the mortgagor's title to described real property securing loans. The purported borrower was fictitious. When the broker received a check from the loan association, he forged the name of the payee, deposited it in the drawee bank and converted the proceeds to his own use. The bank thereupon charged the amount of the check to the account of the loan company. The title insurer paid the loss to the loan company and brought suit against the bank for the amount so paid. The court in *Meyers* quoted with approval from the opinion in *New York Title*: " 'Plaintiff's payment to the loan company was a discharge of its primary contract liability. . . . Plaintiff paid the loan company only what it contracted primarily to do, but now, retaining the premiums or benefit of its contract, it seeks reimbursement from the bank, on the theory that the bank, under a wholly separate and independent contract, was liable to the loan company for having paid checks on forged indorsements. . . . If we assume that neither the plaintiff nor the bank was the wrongdoer, but, by independent contract obligation, each was liable to the loan company, then the satisfaction of such primary liability by the plaintiff would not give rise to a right to recover against

the bank under the doctrine of subrogation, the bank not being a wrongdoer. . . . In our view, the equities in favor of the defendant bank constitute an *insuperable barrier* to plaintiff's right of recovery.' (Italics added.)'' (11 Cal.2d at pp. 97-98.)

In the *New York Title* case, as here, there were two independent contracts, each obligating the contractors to assume liability for the same risk: one contract between the loan company and its insurer indemnifying the loan company from loss caused by forgery, and another contract between the loan company and its bank by which the bank covenanted not to pay its depositor's money upon forged endorsements, for breach of which the bank was liable to indemnify its depositor for the loss. The loss occurred. The insurance company paid and the bank did not. The bank was a ''wrongdoer'' in the sense that it breached its contract with its depositor, but the bank's breach did not cause the loss. The forger was the miscreant.

There are factual distinctions between *Meyers, American Alliance Insurance, New York Title* and the case at bench, but they are distinctions without a real difference. We can see no reason why a fidelity insurance bond for this purpose should be different from a fire insurance policy, or why a bank's contract to hold its depositor harmless from loss if it paid upon a forged endorsement is different from Simpson's contract to indemnify or to obtain insurance to indemnify Patent from a fire loss.

The language used in these cases is the verbiage of equity. The lack of any causal connection between the defendant's breach of contract and the insurer's loss is not specifically articulated, but it is implicit in the discussion of the comparative equities of the parties. The rule in equitable phraseology is this:  ██  Where two parties are contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss.

██  The insurers understandably rely heavily upon the one California case permitting an insurer equitable subrogation to its insured's cause of action upon an independent contract: *Meyer Koulish Co., Inc.* v. *Cannon* (1963) 213 Cal. App.2d 419 [28 Cal.Rptr. 757]. The insurer of a consignor

brought suit in its consignor-insured's name upon a contract between the consignor and the defendant consignees which placed the risk of loss from all hazards upon the consignees for consigned jewelry until the jewelry was returned to the consignor. Without any fault of the consignees the jewelry was stolen from the baggage room of a railroad. The court cited *Meyers* v. *Bank of America Nat. Trust & Sav. Assn., supra,* 11 Cal.2d 92; *Liberty Mut. Ins. Co.* v. *Kleinman, supra,* 149 Cal.App.2d 404; *J. G. Boswell Co.* v. *W. D. Felder & Co., supra,* 103 Cal.App.2d 767; and *American Alliance Ins. Co.* v. *Capital Nat. Bank, supra,* 75 Cal.App.2d 787, and disposed of those cases simply by stating that they were "distinguishable from the present factual situation." (213 Cal. App.2d at p. 425.) After citing assorted cases from jurisdictions other than California, the court concluded: "Appellants were parties to an express contract whereby they assumed responsibility for the loss of the goods of the respondents. They thereby accepted primary liability and it cannot be said that appellants stand on equal footing with the insurance company. The equities in this matter do not balance but preponderate in favor of the insurer of the bailor." (213 Cal. App.2d at p. 429.) The court does not explain why the insurance company's acceptance of the risk of loss was any different from the consignees' acceptance of the risk of loss or why the consignees' liability was "primary" whereas, presumably, the insurance company's was not. No explanation was offered for its conclusion that the equities preponderated in favor of the insurance company. The court did not discuss the causal connection between the breach of the consignees' contract to assume the loss and the payment by the insurer to its insured upon its policy.

The conclusion of the court in the *Meyer Koulish* case cannot be squared with the decision by the California Supreme Court in *Meyers* v. *Bank of America Trust & Sav. Assn.,* and it is out of line with the other California decisions dealing with directly analogous problems.

Upon the facts in this case no public policy is perceivably served by shifting the entire loss from the insurers to Simpson. The shifting of loss is not a deterrent to wrongdoing, as it may be in cases permitting subrogation against a tortfeasor. (*City of Salinas* v. *Souza & McCue Constr. Co., Inc., supra,* 66 Cal.2d at p. 227.) Imposition of the loss upon Simpson would be punitive, and punishment is not the objective of

contractual damages. (*City of Salinas* v. *Souza & McCue Constr. Co., Inc., supra*; see also *United Protective Workers* v. *Ford Motor Co., supra,* 223 F.2d at p. 54; *In re Future Mfg. Coop., Inc., supra,* 165 F.Supp. 111, 113.) If subrogation were permitted, the insurers who have accepted premiums to cover the very loss which occurred receive a windfall. There is no evidence in this record that the insurers' acceptance of the risk or their determination of the cost to the insured of the insurance policies was based in any way upon the terms of Simpson's contract with Patent. The contest is not between two insurance companies, each of which has received premiums for bearing the loss which ultimately occurred, but between insurers and a general contractor who received no independent consideration for the assumption of the risk. The insurers, being in the insurance business, are in a position effectively to spread the risk and to gauge their premiums upon their loss experience. Upon the evidence in the record we are unable to say that Simpson occupies a similar position.

We are aware that the denial of equitable subrogation to the insurers compels the insurers to bear the entire loss and that Simpson is relieved of a responsibility which it solemnly assumed. The result appears to reward delay in the payment of just claims because had Simpson first paid, it likewise would be denied equitable subrogation against the insurers. The conclusion in either event does not have the symmetry of perfect justice.[1] The result, however, is not materially different from many other situations in which a person who has suffered a loss for which more than one person is liable may select one from their number to satisfy the obligation, thereby relieving the remaining parties of their liability. For example, had neither the insurers nor Simpson paid, Patent could have sued both and could have levied execution against either without a right of contribution by the other. (*Weinberg Co.* v. *Heller* (1925) 73 Cal.App. 769, 779 [239 P. 358].)

While from the point of view of the debtors Patent's power of selection reduces a sure thing to a fifty-fifty proposition, it does not change the basic injustice that eventually one of the number may have to bear the entire loss.

---

[1] For discussions of the problems and suggested methods of approach, see King, *Subrogation Under Contracts Insuring Property* (1951) 30 Tex. L.Rev. 62; Langmaid, *Some Recent Subrogation Problems in the Law of Suretyship and Insurance* (1934) 47 Harv.L.Rev. 976; Note, *Subrogation of the Insurer to Collateral Rights of the Insured* (1928) 28 Colum.L.Rev. 202.

The answer probably lies in the fact that all parties below approached the problem on an ''all-or-nothing'' basis. Had the insurers claimed equitable contribution rather than equitable subrogation, and had they succeeded in establishing what kind and amount of insurance coverage would have satisfied Simpson's contractual obligation, they may have succeeded in bringing themselves within the principle established in *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 35-38 [17 Cal.Rptr. 12, 366 P.2d 455]. The equitable-contribution principle requires an equitable distribution of the loss among those who share liability for it. Equitable contribution cannot be applied to this case because the facts necessary to state a claim based upon that theory were neither pleaded nor proved.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied December 26, 1967, and respondent's petition for a hearing by the Supreme Court was denied January 25, 1968. Sullivan, J., was of the opinion that the petition should be granted.