[Civ. No. 28688. First Dist., Div. One. Nov. 27, 1972.]

PACIFIC INDEMNITY COMPANY, Plaintiff and Appellant, v. AMERICAN MUTUAL INSURANCE COMPANY, Defendant and Respondent.

984

## COUNSEL

Bronson, Bronson & McKinnon and Paul H. Cyril for Plaintiff and Appellant.

Lamb & Glynn, Charles G. Norris and Robert L. Lamb for Defendant and Respondent.

## OPINION

**SIMS, J.**—Plaintiff, the insurer of the Regents of the University of California, has appealed from a declaratory judgment which determined that it had no rights against defendant, the insurer of a physician employed by the Regents, for the payment of any proportion of the liability incurred and discharged by plaintiff in defense and in settlement of an action brought by a patient against the physician and the Regents for injuries allegedly negligently caused by the physician in the course of rendering professional medical services while employed by the Regents. Plaintiff contends that it is entitled to pro rata contribution from defendant under general principles of insurance law. On the other hand, defendant asserts, and the trial court concluded, that the provisions of the Government Code dealing with the defense and indemnification of public employees[1] rendered the plaintiff, as insurer of the public employer, solely liable for the liabilities it incurred and paid, and exonerated the defendant, as insurer of the public employee, from any liability to the insurer of his employer.

The case was submitted on stipulated facts, which the trial court adopted

---

[1]In 1963 provisions were added to the Government Code providing for the indemnification of public employees (§§ 825-825.6; Stats. 1963, ch. 1681, § 1, pp. 3270-3271), authorizing public entities to insure any employee against all or any part of his liability for injury resulting from an act or omission in the course of his employment, (§§ 889-991.2; Stats. 1963, ch. 1683, § 12), and directing public entities to provide, with certain exceptions, for the defense of any civil action or proceeding brought against any public employee on account of an act or omission in the scope of his employment as an employee of the public entity and authorizing the purchase of insurance to provide such defense. (§§ 995-996.6; Stats. 1963, ch. 1683, § 16).

The Regents of the University of California are included within the term public entity as used in the foregoing sections of the Government Code (§ 811.2).

The claim involved apparently arose prior to October 31, 1963, the effective date of the foregoing provisions. At the time, July 1, 1961, plaintiff's original policy became effective authority for acquiring insurance was found in former section 1956 of the Government Code, as amended in 1959. (Stats. 1959, ch. 2167, § 3, p. 5274. § 1956 was amended by Stats. 1961, ch. 444, § 1, p. 1517, and repealed Stats. 1963, ch. 1682, § 4, p. 3292.) Prior to September 15, 1961 the responsibility of a public entity for the defense of an officer or employee who was sued for damages was governed by the provisions of former sections 2001 and 2002 of the Government Code, as enacted in 1943. From September 15, 1961 until its repeal October 31, 1963, the matter was governed by the provisions of section 2001 as revised in 1961. (Stats. 1961, ch. 1692, §§ 1, 2 and 3, p. 3669; Stats. 1963, ch. 1683, § 3, p. 3299.)

The provisions for indemnification in sections 825-825.6 of the Government Code are embraced within the provision "This act applies retroactively to the full extent that it constitutionally can be so applied." (Stats. 1963, ch. 1681, § 45, subd. (a), p. 3288.) The parties have treated the 1963 statutes as governing the relations between the claimant and the public employee, and as between the public employee and the public employer. Their rights and obligations will therefore be so considered here, without any expression of opinion as to whether that assumption is correct.

as findings of fact. From them the following appears: Plaintiff and defendant are both insurers licensed to do and doing business in the State of California. Plaintiff issued to the Regents of the University of California, a corporation, which was acting under the authority conferred by sections 989-991.2 of the Government Code (cf. fn. 1 above), a policy of liability insurance for the period from July 1, 1961 to July 1, 1967. By the terms of this policy[2] and the terms of an endorsement thereto effective July 1, 1964,[3] the Regents were insured, and employees of the Regents were in-

---

[2]Plaintiff's policy, issued for the period July 1, 1961 to July 1, 1967, to "The Regents of the University of California and the University of California," as "Named Insured" provided for malpractice liability in the sum of $50,000 for each claim to an aggregate liability of $500,000. The plaintiff undertook under "Coverage D—Malpractice Liability [¶] To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . sustained by any person, arising out of malpractice, error or mistake" as more particularly described in the policy. The plaintiff also agreed, "With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient, except that no claim or suit covered by or asserted under Coverage D—Malpractice Liability, . . . shall be settled or compromised without the written consent of the insured; . . ."

The policy further reads, "The unqualified word 'insured' includes the named insured and also . . . [¶] (4) under Coverage D, at the option of the named insured, any person, consulting physician, resident physician, surgeon, dentist, interne, externe, technician, pharmacist or graduate nurse who is an employee or agent of the named insured serving as such with or without compensation. . . ."

With respect to other insurance the policy provided as follows: "16. OTHER INSURANCE [¶] If there be any other insurance covering an occurrence, event or claim as described in this policy, the insurance under this policy shall be deemed excess insurance over and above, but not contributing with, such other insurance, but if the carrier or carriers of such other insurance shall deny liability therefor in its entirety or as to any portion of the insurance granted by such primary coverage, then and in that event this company shall be liable under this policy in the same manner and to the same extent as though such other insurance did not exist, and the insured shall assign to this company all rights against the carrier or carriers of such other insurance, and execute all papers necessary to secure to this company such rights or shall in their own name whenever requested by the company, and at the company's expense, institute any demand or legal proceeding which the company deems necessary against the carrier or carriers of such other insurance. Failure on the part of the carrier or carriers of such other insurance to pay indemnity or to unqualifiedly defend or fail to furnish any other protection or indemnity contained in such primary policy shall, for the purpose of this insurance, be considered as denial of liability."

With respect to subrogation the policy reads: "17. SUBROGATION [¶] In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights. . . ."

[3]The form added to the Regents' policy for the period July 1, 1964 to July 1, 1967 appears to be a complete revision of the insuring agreements, exclusions and

sured and were covered for liability arising out of their employment with the Regents.

Defendant issued a policy of liability insurance for a term from May 1, 1962 to May 1, 1963 to a physician and surgeon employed by the Regents[4] which insured the physician against all sums which he, as the insured, should become obligated to pay by reason of any liability imposed upon

---

conditions of the policy. Since other exhibits to the stipulation indicate that the publicly employed physician was served with a summons and complaint on April 27. 1964, and since the policy issued by defendant under which the plaintiff seeks to recover, covered the period from May 1, 1962 to May 1, 1963 (see fn. 4 below and cf. fn. 1 above), the revised form would appear to be inapplicable despite the stipulation that the copy of the policy, including the endorsement, which is attached to the stipulation "is applicable to the time period involved in the case of" the named publicly employed physician.

The endorsement included, in "Coverage A—Personal Liability," the following obligation: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of liability imposed by law, including Chapter 1681 of the State of California Statutes of 1963, . . . [or liability assumed by contract insofar as the named insured may legally do so] for damages: (1) because of bodily injury, sickness or disease, including death at any time resulting therefrom,.sustained by any person or persons, or (2) because of any other injury a person may suffer. to his person, including but not limited to malpractice, false arrest, detention or imprisonment, malicious prosecution, libel, slander, defamation of character, invasion of privacy, wrongful eviction or wrongful entry. . . ."

The insurer also undertook to defend the insured in any suit claiming damages, and includes in the word "insured," as additional insureds: "(1) officers, servants and employees of the named insured for claims presented against them arising out of the performance of their duties as such, . . ." It also contains "Other Insurance" and "Subrogation" clauses of somewhat different wording than the original policy. The latter excludes any right the insured may have to recover "against any person or organization . . . affiliated with or under the control of the insured."

[4]The insurance undertaken by defendant for the period May 1, 1962 to May 1, 1963 is represented by a certificate issued under a professional liability policy in which the name and address of the certificate holder were designated as "[Name of Physician] University of California Medical Center, San Francisco, California." Extracts from the underlying policy indicate that the defendant undertook to defend "the insured" against, and pay, if "the insured" became obligated to pay, claims based upon malpractice, error, negligence or mistake.

The policy provides: " 'Insured' means each individual or partnership named as the insured in a certificate issued under this policy."

It also contains the following provisions: "3. *Other Insurance*—If the insured has other insurance against a loss covered by this Part, the company shall not be liable under this Part for a greater proportion of such loss than the applicable limit of liability stated in the certificate issued under this policy to the insured bears to the total limit of liability of all valid and collectible insurance against such loss.

"4. *Subrogation*—In the event of any payment under this Part. the company shall be subrogated to all the insured's rights of recovery therefore, against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

him by law for damages because of injuries resulting from professional services rendered, as more particularly defined and set out in the policy. That policy further provided that the defendant would defend the insured in actions brought to enforce any such liabilities in seeking the recovery of damages.

An action was brought against the publicly employed physician and others charging him with negligence and carelessness in the treatment of a patient and with the breach of express and implied warranties. At all times mentioned in the complaint the physician was an employee of the Regents and the action was brought against him in connection with activities within the course and scope of his employment by the Regents.

According to the physician, he was served with a copy of the summons and complaint on April 27, 1964. On October 3, 1967, after the case had been removed from San Francisco County to Solano County, and an amendment had been filed to the complaint following the sustaining of demurrers, the physician forwarded copies of the original complaint and the amendment to the Regents and tendered the defense of the action to them pursuant to the provisions of section 825 of the Government Code, and advised the Regents he would expect them to pay any judgment, or any settlement to which they agreed.

On May 24, 1968 plaintiff, as insurer of the Regents, accepted the tender of defense and agreed to satisfy any judgment which might be returned against the employee and to pay defense costs incurred after the date of the tender. This acceptance was subject to the reservation of plaintiff's right to negotiate, arbitrate or litigate the question as to whether defendant insurer and plaintiff insurer have a pro rata situation, with each having the duty to defend the physician. Thereafter the action was settled by plaintiff insurer.[5]

I

Plaintiff relies on the general principle that where liability insurance policies in various companies cover several parties involved in the

---

[5]The stipulation further provided: "In addition to the action against [the named physician], other actions are pending in the Superior Court of the State of California involving large sums of money wherein the same or similar question has arisen with respect to the coverage afforded by plaintiff and defendant to employees of the Regents."

Although the court adopted this statement in its findings of fact, the conclusions of law and the judgment are confined to the issues raised by the claim against the named physician.

same accident, or where the same negligent party is covered by more than one full coverage insurance policy, an insurance company which pays the total loss or incurs expense in connection with the defense of a claim may enforce contribution from another insurer of the same risk. (See *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 34-38 [17 Cal. Rptr. 12, 366 P.2d 455]; *Oxnard Union High Sch. Dist.* v. *Teachers Ins. Co.* (1971) 20 Cal.App.3d 842, 846 [99 Cal.Rptr. 478]; *Hartford Acc. & Indem. Co.* v. *Pacific Indem. Co.* (1967) 249 Cal.App.2d 432, 435-437 [57 Cal.Rptr. 492]; *Meritplan Ins. Co.* v. *Universal Underwriters Ins. Co.* (1966) 247 Cal.App.2d 451, 457 [55 Cal.Rptr. 561]; *Truck Ins. Exchange* v. *Torres* (1961) 193 Cal.App.2d 483, 489-491 [14 Cal.Rptr. 408]; and *Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal. App.2d 192, 199 [318 P.2d 84].)

In the case last cited the court observed, "The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. [Citations.] Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders." (155 Cal.App.2d at pp. 195-196. See also *Hartford Acc. & Indem. Co.* v. *Pacific Indem. Co., supra,* 249 Cal.App.2d 432, 436-437; and *Truck Ins. Exchange* v. *Torres, supra,* 193 Cal.App.2d 483, 489-490; and cf. *Meritplan Ins. Co.* v. *Universal Underwriters Ins. Co., supra,* 247 Cal.App.2d 451, 457.)

The general principles applicable to employer and employee are recognized in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423 [296 P.2d 801], as follows: "Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe [citations]; that is, as between employer and employe in such a situation, the obligation of the employe is primary and that of the employer secondary. . . . [¶] Under equitable principles of subrogation the insurer of the employer who has been compelled to pay the judgment against the employer may recover against the negligent employe or the employe's insurer. [Citations.]" (46 Cal.2d at pp. 428-429. See also Veh. Code, § 17153, and former § 17002, repealed Stats. 1965, ch. 1527, § 3, p. 3620.[6])

---

[6]Section 17002 of the Vehicle Code formerly provided, "If there is recovery under this chapter against a public agency, it shall be subrogated to all the rights of the

990

■ It may be assumed that in the absence of the 1963 indemnity legislation, since the plaintiff's policy covered the publicly employed physician as an additional insured, and the defendant's policy covered him directly there was concurrent insurance on his liability. Both the original and amended policy issued by plaintiff purport to furnish excess insurance to the public employee. The policy issued by the defendant insurer limits its liability to the proportion of the loss which the "applicable limit of the insurance stated in the certificate . . . bears to the total limit of liability of all valid and collectible insurance against such loss." Plaintiff defers to the latter provision and seeks only pro rata contribution from defendant.

## II

The 1963 legislation must be considered to determine if it affects the normal right of an employer to recover from an employee for whose torts the former has become vicariously liable (see fn. 1 above).

Section 825 of the Government Code provides in pertinent part: "If an employee . . . of a public entity requests the public entity to defend him against any . . . action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity . . . the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. . . ."

Section 825.4 provides in part: "Except as provided in Section 825.6 [where the act or omission is not within the scope of public employee's employment or the public employee acted or failed to act because of actual fraud, corruption or actual malice], if a public entity pays any claim . . . against . . . an employee . . ., or any portion thereof, for an injury arising out of an act or omission of the employee . . ., he is not liable to indemnify the public entity."

---

person injured against the officer, agent, or employee and may recover from the officer, agent, or employee the total amount of any judgment and costs recovered against the public agency, together with costs therein." (Stats. 1959, ch. 3, § 1, p. 1653.) It was believed that the adoption of sections 825-825.6 of the Government Code in 1963 (see fn. 1 above) repealed those provisions by implication. (See Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) §§ 2.9 and 10.21, pp. 40 and 450.) In 1965 the statute was amended to refer to the indemnity provisions of the Government Code. The Law Revision Commission comment states: "The reference at the beginning of this section to the indemnification provisions of the Governmental Liability Act makes it clear that these provisions, rather than Vehicle Code Section 17153, control subrogation rights of the public entity where liability is based upon the acts or omissions of public personnel acting within the scope of their public employment."

In reviewing the above provision in *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the opinion states: "The public employee need not suffer concern over the possibility that he will be compelled to finance and oversee a tort suit filed against him personally; the statute provides for defense by the public entity upon notice, and the employee's best interests clearly favor the giving of such notice. Moreover, the public employee faces only a slim danger of ultimate personal liability; such liability attaches only in the rare instances of injuries arising from acts either outside the scope of employment or performed with actual fraud, corruption, or malice. Indeed, a principal purpose of the indemnification scheme laid out in Government Code sections 825 to 825.6, limiting the personal threat of suit or liability, centered on assuring the zealous execution of official duties by public employees. To the extent that the ardor of public employees might be affected by the threat of personal liability, these fears will be allayed by the indemnification provisions." (69 Cal.2d at pp. 791-792, fns. omitted. See also *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 14 [84 Cal.Rptr. 173, 465 P.2d 61]; and Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) §§ 10.21-10.26, pp. 450-455. Cf. *Herndon* v. *County of Marin* (1972) 25 Cal.App.3d 933, 937, fn. 3 [102 Cal.Rptr. 221].)[7]

Similar considerations apply to the public employer's obligation to defend as formerly found in sections 2001 and 2002 of the Government Code and redrawn and reenacted in sections 995-996.6 in 1963. Section 996 provides: "A public entity may provide for a defense pursuant to this part by its own attorney or by employing other counsel for this purpose or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense pursuant to this part are proper

---

[7]*Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61], also lays the ghost of an argument advanced by the plaintiff in the lower court by analogy to an exception to the collateral source rule which was expounded in *City of Salinas* v. *Souza & McCue Constr. Co.* (1967) 66 Cal.2d 217 [57 Cal.Rptr. 337, 424 P.2d 921]. In the latter case, the court intimated that to deny a public entity credit for indemnity owed and paid to a claimant by another would in effect subject the public entity to punitive damages. (See 66 Cal.2d at pp. 226-228.) In *Helfend* the court concluded, "We . . . reaffirm our adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively . . . paid or in cases in which the collateral source would be recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement. . . . [¶] Having concluded that the collateral source rule is not simply punitive in nature, we hold, for the reasons set out *infra,* that the rule as delineated here applies to governmental entities as well as to all other tortfeasors. We must therefore disapprove of any indications to the contrary in *City of Salinas* v. *Souza & McCue Constr. Co., supra,* 66 Cal.2d 217, 226-228." (2 Cal.3d at pp. 13-14.)

charges against a public entity. A public entity has no right to recover such expenses from the employee or former employee defended." (See *Sinclair* v. *Arnebergh* (1964) 224 Cal.App.2d 595, 599-600 [36 Cal.Rptr. 810]; and Van Alstyne, *op. cit.*, § § 10.11-10.20, pp. 442-449.)

It, therefore, appears that the primary liability for the expenses of defense of the public employee and the amount paid in settlement of the claim arising out of his activities in the course and scope of his employment lay with the Regents. Under its contract with the Regents the plaintiff undertook those obligations by reason of its obligation to indemnify the Regents, and by reason of its obligation to defend, and pay the claims assessed against the employees of the Regents. Plaintiff has paid out no more than it undertook to do. Since the primary responsibility is that of the Regents, it can only secure contribution if there is other insurance covering the obligation of the Regents. Plaintiff has no rights under the subrogation clause, because any attempt by the Regents to secure contribution from its employee or his personal insurer would violate the legislative policy which gave rise to the provisions reviewed above.

It is true that the defendant also undertook to defend and indemnify the public employee, and it may therefore be receiving a windfall if it is relieved from all liability. On the other hand, there is no good reason why the employer's insurer should benefit from the prudence of the public employee in providing himself with liability insurance which would cover his acts or omissions which were not within the scope of his employment, or in the event he was charged with actual fraud, corruption or malice, and which would provide him with coverage in addition to that furnished by the public employer if a claim exceeded that so furnished. (Cf. *Helfend* v. *Southern Cal. Rapid Transit Dist.*, *supra*, 2 Cal.3d 1, 9-14.) In fact, if the Regents and the plaintiff insurer had failed to assume the employee's defense and pay the claim, and the defendant insurer did so, it would appear to have a right over against the Regents by subrogation to the rights of the employee under sections 825.2 and 996.4 of the Government Code.

The situation is governed by the dictum in *Amer. Auto. Ins. Co.* v. *Seaboard Surety Co.*, *supra*, in which the court stated: "The principle of equitable subrogation overrides the terms of the insurance policies. [¶] If Republic [lessor] had a right of indemnification from Kaufman [lessee] the *Continental* case, *supra* [46 Cal.2d 423], would be controlling. The fact that that right arose from agreement rather than tort would be immaterial. One who has a superior equity growing out of contract may enforce it by way of subrogation although that contract was made with a third party. [Citations.]" (155 Cal.App.2d at p. 196. See also *Pylon, Inc.* v. *Olympic Ins. Co.* (1969) 271 Cal.App.2d 643, 648-650 [77 Cal.Rptr. 72];

*Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal. App.2d 506, 509-510 [64 Cal.Rptr. 187]; and *Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419, 425-429 [28 Cal.Rptr. 757].)

In the lower court the plaintiff relied upon the *Patent Scaffolding Co.* case, *supra,* in which it was held that the indemnitee's insurer who paid the loss could not recover from the indemnitor who failed to perform a contract to provide insurance. (256 Cal.App.2d 506, 511-517, disapproving *Meyer Koulish Co.* v. *Cannon, supra.* See also *Mid-Century Ins. Co.* v. *Hutsel* (1970) 10 Cal.App.3d 1065, 1070 [89 Cal.Rptr. 421].) Whatever applicability the last cited cases might have in the event of a breach of a public entity's failure to furnish insurance in the manner provided by the provision of sections 989-991.2 of the Government Code, is rendered insignificant because of the further obligations of the public entity to furnish a defense and to pay the claim. In *Pylon, Inc.* v. *Olympic Ins. Co., supra,* the court pointed out that neither the indemnitor nor its insurer could secure contribution from the indemnitee's insurer. (271 Cal.App.2d 643, 648-652, distinguishing the *Patent Scaffolding* case.)

The conclusion that the plaintiff insurer is not entitled to contribution in this case is consistent with the policy behind the 1963 legislation. If the employer-indemnitor's insurer is permitted to look to the employee-indemnitee's insurer there will be a tendency to shift the responsibility to the latter wherever possible. Since, if successful, this tendency would result in less risk to the employer's insurer it should result in lower premiums to the public entity, and, in turn, lead the public body to encourage its employees to carry personal insurance, at increased cost to the employees. On the other hand, the conclusion reached above possibly may permit the public employee to bargain for personal insurance at lower rates because he need only insure against risks not arising in the course of his employment, thereby leaving the total burden of insuring against such risks as may arise in the course of his employment on the public entity and its insurer as intended by the Legislature.

### III

Section 996.6 provides: "The rights of an employee or former employee under this part are in addition to and not in lieu of any rights he may have under any contract or under any other enactment providing for his defense." A commentator has noted, "Contractual rights preserved by this section include, for example, rights under insurance policies. Public entities may insure their employees against personal liability, including liability for the expense of defending claims. See § 990(c). Further, public employees may purchase private insurance with coverage for defense by insurance counsel

or reimbursement for defense expenses. These contractual rights are in addition to those granted by pt. 7." (Van Alstyne, *op. cit.*, § 996.6, notes, p. 857.)

Plaintiff asserts that this section demonstrates that the provisions of the Government Code do not relieve the defendant insurer of its contractual obligations. In *Jurd* v. *Pacific Indemnity Co.* (1962) 57 Cal.2d 699 [21 Cal.Rptr. 793, 371 P.2d 569], the court held that although the public entity could only be vicariously liable under the provisions of the Vehicle Code when the public employee was acting within the scope of his employment, the public entity's insurer could be liable contractually, under the provisions of its policy and the provisions of the Vehicle Code which related to permissive users, when the employee was using the insured vehicle with implied permission, although for his purely private purposes. (57 Cal.2d at pp. 703-705.) In *City of Newport Beach* v. *Sasse* (1970) 9 Cal.App.3d 803 [88 Cal.Rptr. 476], it was determined that the provisions of the Government Code which required the public entity to furnish a defense to its employee, did not preclude recovery of the expenses of that defense from the public entity's insurer when the employer had furnished such a defense after notice to its insurer (9 Cal.App.3d at p. 809).

Although the foregoing authorities establish the proposition for which plaintiff has cited them, they do not assist in establishing that the defendant insurer contracted to indemnify the Regents for any of the obligations which are imposed on it by law as a public entity, and which plaintiff insurer expressly undertook to, and did in fact perform. They, therefore, do not affect the conclusions expressed in part II above.

On the other hand, in *Oxnard Union High Sch. Dist.* v. *Teachers Ins. Co.*, *supra*, 20 Cal.App.3d 842 (hg. in S.Ct. den.) after an action against the public employee, whom the employer refused to defend, and against the employing public entity had been settled, the trial court, to whom the matter was submitted, determined, on the basis of the policy provisions, that the employee's insurer was liable to its full limit, and the employer's insurer was only liable for the excess, and that the liability for attorneys' fees and court costs should be divided by the two insurers proportionately to the principal liabilities as so determined. The Court of Appeal affirmed that determination. The appellate court observed, "The rationale for this determination was that Teachers' insurance policy covering Farrow and the District as an additional insured afforded primary coverage and United's insurance policy covering the District afforded only coverage excess to that provided by Teachers ($100,000). [¶] Teachers does not challenge this result on the ground that the court misconstrued the two insurance policies."

(*Id.,* p. 844.) That decision may be distinguished from this case on the ground that there the employee's insurance admittedly covered the employer who is primarily liable under the statutes. In this case, however, there is nothing in the certificate issued by defendant insurer which purports to cover the Regents.

In the *Oxnard* case the court did reject the employee's insurer's argument that the result was contrary to the provisions of the Governmental Tort Liability Act of 1963, particularly sections 825 and 995,[8] and to this extent it cannot be reconciled with the views set forth above. In the first place, the decision properly assumes, because it was conceded by the employee's insurer, that the provisions of that insurer's policy and of section 16451 of the Vehicle Code afforded primary coverage to the employing public entity.[9] Secondly, the court held that the public entity, a school district, could discharge its obligation to insure against the personal liability of an employee for damages caused by his negligent act or omission when acting within the scope of his employment (Ed. Code, § 1017, subd. (a)(2); cf. Gov. Code, § § 989-991.2) by taking out insurance with an "other insurance" clause which would bring in the employee's insurance as the primary coverage, and only insure any excess liability. For the reasons of policy expounded in part II above that conclusion puts the burden of furnishing primary insurance on the wrong party and it does not seem warranted in the light of the legislative purpose. In any event, it should not be applied to the situation presented by this case where there is neither concession nor contract provision which renders the employee's insurance available for the satisfaction of the public entity's obligation to the victim or its obligation to its employee.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied December 20, 1972, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1973.

___

[8]In a footnote the court made the following paradoxical statement: "This holding represents a reasonable construction of the statutes involved. It does, however, impose approximately 87 percent of the liabilities involved upon the insurer of the person (Farrow) who under the Governmental Tort Liability Act is immune from such liabilities." (20 Cal.App.3d at p. 846, fn. 5.)

[9]The principles enunciated in part II of this opinion would leave open for determination whether the provisions of section 16451 of the Vehicle Code when viewed in the light of the provisions of the Governmental Tort Liability Act of 1963, and amendments to the Vehicle Code in 1965 (see fn. 6 above), would make it possible for a public employee to purchase automobile insurance to cover only liability not covered by that act.