[No. B015332. Second Dist., Div. Four. Aug. 8, 1986.]

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
Plaintiff and Appellant, v.
GIBRALTAR CASUALTY COMPANY et al.,
Defendants and Respondents.

COUNSEL

Stockdale, Peckham & Werner and Paul F. Sowa for Plaintiff and Appellant.

Liebman & Reiner, John W. Evans and James M. O'Brien for Defendants and Respondents.

OPINION

**McCLOSKY, J.**—The plaintiff, Government Employees Insurance Company, a corporation (GEICO), appeals from the superior court's grant of

summary judgment in favor of defendants Rialto Unified School District (District) and Gibraltar Casualty Company, a corporation (Gibraltar), and the court's denial of plaintiff GEICO's motion for summary judgment or in the alternative for summary adjudication of issues determined to be without substantial controversy. We affirm.

## CONTENTIONS

GEICO contends that: "I. Since [District] was not an insured under the GEICO policy; and since the policy of the law requires that the public entity (not the public employee) ultimately shoulder the burden of a loss; the burden of Gauthier's claim should be borne entirely by [District] and/or Gibraltar; . . . . II. Since [District] was self-insured for the first $50,000 layer; and since [District] did not produce any evidence to show that it had filed a certificate of self-insurance with the Department of Motor Vehicles; the trial court improperly granted [District]/Gibraltar's motion for summary judgment; . . . . III. Since [District]'s duty to defend and indemnify McClellan did not sound in tort, but is more properly analogized to a 'contractual' obligation; Insurance Code Sec. 11580.9 has no applicability whatsoever to this case; IV. Even if Insurance Code Sec. 11580.9 does apply to the instant situation; the public policy expressed therein should be disregarded in favor of the more important public policy expressed in Government Code Sec. 825; and V. The trial court improperly overruled GEICO's objections to the evidence proferred by [District]/Gibraltar."

## FACTS

On May 8, 1982, Ms. McClellan, a music teacher acting within the scope of her employment by District, was driving her own private automobile when it struck a Mr. Gauthier and severely injured him. Gauthier thereafter filed a timely suit against McClellan but filed neither a government tort claim nor a lawsuit against the District.

On August 5, 1983, Ms. McClellan, through attorneys retained for her defense by GEICO, filed a demand upon District to defend and indemnify her pursuant to Government Code section 825. District did not deny that Ms. McClellan was acting within the scope of her employment at the time of the accident, but District's attorneys contended that District's liability was purely excess over the automobile insurance, and that it was GEICO's duty to defend and indemnify McClellan and District to the full extent of its policy limits. GEICO eventually settled the suit with Gauthier for its $100,000 policy limit. GEICO then brought this suit against District and its insurer, Gibraltar, attempting to recoup the amount of the settlement it

had paid to Gauthier, and the amount of the attorneys fees it had expended in defending McClellan in Gauthier's suit against her. Both sides moved for summary judgment. The motion of District and Gibraltar was granted, and the motion of GEICO was denied. GEICO appeals.

DISCUSSION

I

GEICO's first contention is that "[s]ince [District] was not an insured under the GEICO policy; and since the policy of the law requires that the public entity (not the public employee) ultimately shoulder the burden of a loss; the burden of Gauthier's claim should be borne entirely by [District] and/or Gibraltar."

This contention is based on two fallacious premises. First, that District was not an insured under the GEICO policy, and second, that the result reached by the trial court required the public employee, rather than her insurance company GEICO to "shoulder the burden of the loss." We conclude that neither of these premises is correct, and that this contention is without merit.

Since Ms. McClellan was acting within the scope of her employment at the time of the accident, District, subject to certain exceptions not applicable here, is obligated to defend her and pay any judgment against her based thereon, or any compromise or settlement of the claim or action to which the public entity has agreed. (Gov. Code, § 825.) What insurance proceeds the District has available to itself to satisfy that obligation is a different question.

In pertinent part, Government Code section 825, enacted in 1963, provides: "If an employee . . . of a public entity request[s] the public entity to defend him against any claim . . . for an injury arising out of an act or omission occurring within the scope of his employment . . . and the employee . . . reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim. . . ."

Where the employee makes this request, this section, together with Government Code sections 996.4 and 825.4, affirmatively requires the public entity, subject to certain inapplicable exceptions, to not only pay for the defense of a lawsuit against its employee, but to also pay any judgment

against the employee or any compromise or settlement of the claim against that employee.

Although District is named as a defendant we are not concerned here with an actual dispute between the District and its employee McClellan as to whether District must defend her or pay the $100,000 settlement. That District was required to defend employee McClellan and pay the $100,000 settlement is, under the facts of this case, abundantly clear. Also abundantly clear is the fact that McClellan paid nothing and that GEICO paid the entire settlement and defense costs. She is thus clearly not, as the defense asserts she is, required to "shoulder the burden of [the] loss."

■ Additionally, Education Code section 1017, subdivision (a)(2), requires a school district to insure against, among other things, the personal liability of a district for damages and injuries to person caused by the negligent act or omission of an employee when acting within the scope of his employment. (See 27 Ops.Cal.Atty.Gen. 271-272 (1956).) This statute does not specify how this obligation to so insure is to be met. (*Oxnard Union High School Dist.* v. *Teachers Ins. Co.* (1971) 20 Cal.App.3d 842 [99 Cal.Rptr. 478].)

No provision in Government Code sections 825, 825.4, 996.4, or Education Code section 1017, subdivision (a)(2), prevents the public entity from satisfying its obligation to pay any such judgment, compromise, settlement or defense costs through funds available to it through *any* insurance policy. That is so whether the public entity is the named insured in such policy or merely has that coverage available to it as an additional insured under such policy. (*Oxnard Union High School Dist.* v. *Teachers Ins. Co., supra,* 20 Cal.App.3d 842.)

GEICO contends that since District was supposed to be self-insured for the first $50,000 and produced no evidence that it had filed a certificate of self-insurance with the Department of Motor Vehicles, the trial court improperly granted the motion of Gibraltar and District for summary judgment. In support of this contention, it argues that Insurance Code section 11580.9 can have no application to this case since District failed to produce evidence that it had obtained such a certificate of insurance.

While District's failure, if any, to have obtained a certificate of self-insurance might be relevant if we were here concerned with a dispute between Gibraltar and District or McClellan and District, or between District and the State of California, there is no such dispute here. As appellant itself asserts in its opening brief, GEICO's policy states that it should not be considered primary insurance whenever the policy states that the policy

applies in excess of other insurance. That language can certainly not be tortured into an interpretation that it is excess of any amount for which District is otherwise *uninsured*.

While agreeing with the majority that Insurance Code section 11580.1, subdivision (b)(4), requires GEICO to include language in its policies which in this case makes the District an insured and that Insurance Code section 11580.9 "contains provisions that make the teacher's private insurance policy the primary policy in this case while that of the School District is merely excess," the dissent nevertheless concludes that "[i]t is farcical to insist that the School District is complying with its duty to indemnify its employees when the proceeds that allegedly do so come from an insurance policy bought and paid for by the employee . . . ." (Dis. opn., p. 176, *post*.)

This, we suggest, results from the dissent's failure to distinguish between the employee, McClellan, and her insurer, GEICO. GEICO is the insurer not only of employee McClellan, but also of District as well. Under the circumstances of this case, under the statutory language and under the GEICO policy provisions, the GEICO policy coverage was an asset of the District as well as of McClellan.

The satisfaction of District's obligation to its employee does not depend upon which of the two policies paid the loss. Nor does it depend upon which of the two insureds paid the premium for the insurance policy used to satisfy the judgment or pay the compromise or settlement. The duty to satisfy that obligation is based solely on the statutory and policy language. The record reflects that this settlement was within GEICO's policy limit and that, therefore, neither McClellan nor District was required to pay any part of the loss out of her or its own pocket. The plain fact is that the entire loss was paid by GEICO and that GEICO is trying to recover its payment from Gibraltar and only nominally from District.

Certainly, if the instant settlement had been for an amount more than GEICO's $100,000 limit, the amount of that settlement above $100,000 would have had to be paid by Gibraltar up to the stated amount of its policy limit, and if such a settlement had been in an amount in excess of Gibraltar's stated limit, such amount over Gibraltar's limit would have had to be paid by District itself. In short, while the employee is not immune, as is suggested by the dissent, neither does the employee "foot the bill," or any part of the judgment, compromise or settlement, as long as the District has any assets available to pay such judgment, compromise or settlement.

The dissent shows the true focus of its concern by stating that "following a $100,000 claim, [the employee] will certainly have to pay exorbitantly

for such insurance coverage in the future and may be totally uninsurable." (Dis. opn., p. 176, *post.*)

The answer to that concern is fourfold. First, District's obligation is solely statutory and nothing in any of the statutory provisions requires any public entity to protect its employee against the supposed eventuality of higher future insurance premiums that may be charged after an accident for which the employee is asserted to be responsible.

Second, the dissent assumes that the employee will have to pay a higher premium for future automobile liability insurance she obtains after such an accident—only if her "private" insurance company (i.e., GEICO) pays for the loss caused by her but not if the loss is paid by the insurance company to whom her public entity employer paid a premium. That assumption is entirely speculative and unsupported by any evidence in the record.

Logic would seem to dictate that the operative factor an insurance company would consider in deciding the amount it charges as premium for future automobile liability insurance would be the employee's driving history, including whether or not she caused the accident for which such a considerable amount was paid in settlement, rather than basing that decision on which of two insurance companies paid that settlement based upon her driving conduct. We may not, however, and will not speculate on that point since there is no evidence on it in the record.

Further, as heretofore stated, the possibility of a future higher insurance premium is not one of the risks against which the legislative enactments were directed. On the other hand, the Legislature plainly stated in Insurance Code section 11580.9, *the total public policy* regarding the priorities between the two policies here under consideration. We may not act as a superlegislature to correct a supposed risk against which the legislature did not see fit to act.

Third, the dissent's concern with the employee's future uninsurability is illfounded. (Dis. opn., p. 177, *post.*) It is true that such an employee might have to obtain automobile insurance as an assigned risk at a higher premium, but such supposed higher premium or uninsurability is rank speculation unsupported by anything in the record.

Fourth, the dissent is misguided in stating that an "employee's assets are *immune.*" (Dis. opn., p. 177, *post,* italics added.) The employee is protected against a tort victim's claim under the circumstances here presented by the limit of the policy of insurance for which he or she paid, by the limits of

the policy of insurance for which the employing public entity paid, and over that limit by all of the assets of the public entity to the extent those assets are unencumbered. In the unlikely event that that large stack of assets proved insufficient to satisfy a judgment in favor of a severely injured victim or victims of the negligence of such an employee, that victim or those victims may still look to the employee's own assets in addition to the foregoing to satisfy such a judgment.

In other words, neither the employee nor his assets are *immune* from such a judgment. If, for example, McClellan were actually immune then District, as a public entity, would also be immune, and neither GEICO nor Gibraltar would have an obligation to pay the settlement or defense costs.[1] To the extent that the dissent and footnote 5 of the *Oxnard* case (20 Cal.App.3d at p. 846) refer to an employee's "immunity," under the circumstances of that or this case, we believe they are wrong.

The dissent fails to distinguish between the employee and his or her "private insurance company." Insurance Code sections 11580.1, subdivision (b)(4), and 11580.9 are premised on that obvious distinction and prescribe an order of priorities between applicable policies of insurance. Once again we may not disregard those statutory enactments nor find a nonexistent conflict between the Government Code and Insurance Code sections.

## II

■ We turn to the question of whether District is an insured under GEICO's policy.

GEICO contends that since District was never even theoretically liable in tort, there could be no coverage under the GEICO policy.

That contention overlooks the distinction between liability on the one hand and insurance coverage on the other hand. Coverage exists even absent an accident or occurrence. Liability does not.

We conclude that District is entitled to coverage as an additional insured under the GEICO policy. Insurance Code section 11580.1, subdivision

---

[1] Government Code section 815.2 states: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

(b)(4),[2] requires that all motor vehicle liability policies issued or delivered in this state must provide coverage for anyone legally responsible for the use of the motor vehicle described in that policy.

In compliance with that section, GEICO's policy provided coverage by defining as "persons insured" thereunder, in addition to its named insured, "3. Any other person or organization for his or its liability because of the acts or omissions of any insured. . . ." Ms. McClellan was the named insured under the GEICO policy and under that policy District was clearly a "person or organization" which was liable "because of the acts or omissions of" Ms. McClellan in the operation or use of her vehicle at the time of the accident. We thus conclude that District was itself an insured under the GEICO policy, and that this contention of appellant lacks merit.

## III

In light of the aforementioned statutes and policy language, Gibraltar claims the insurance it affords is merely excess insurance to that afforded by GEICO.

In 1970, the Legislature enacted Insurance Code section 11580.9. Subdivision (d) of this section provides that: "[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, *it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.*" (Italics added.)

We first distinguish between the obligations GEICO owed District and the obligations of GEICO vis-à-vis Gibraltar.

As to GEICO's obligations to District, nothing in the record casts District in the role of an insurer. Therefore, no question can be successfully raised

---

[2]Insurance Code section 11580.1, subdivisions (a) and (b)(4) provide in pertinent part: "(a) No policy of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state on or after the effective date of this section unless it contains the provisions set forth in subdivision (b). . . . [¶] (b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions: . . . [¶] (4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his permission, express or implied, and within the scope of such permission, . . ."

as to who, as between District and GEICO would be the primary insurer and who would be the excess insurer. In short, GEICO has a clear duty under the terms of its policy to pay on behalf of District as well as on behalf of McClellan the amount of the settlement and the attorney fees incurred in the defense of Gauthier's claim against McClellan.

As to the primary and excess status of Gibraltar and GEICO, since they did not contract with each other, that status would be an equitable question for our resolution were it not for the conclusive presumption stated in Insurance Code section 11580.9, subdivision (d). That statute controls. It provides that as between two policies affording valid and collectible insurance that apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, "it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned vehicle shall be primary and the insurance afforded by any other policy shall be excess."

Ms. McClellan's private vehicle was the described and rated owned vehicle in the GEICO policy and not in the Gibraltar policy. It therefore appears clear to us that under the plain language of section 11580.9, GEICO's policy is primary and Gibraltar's is excess.

Yet GEICO argues that District's duty to McClellan does not sound in tort but is more properly "analogized" to a contractual obligation, and therefore Insurance Code section 11580.9 has no applicability to this case.

District's obligation to McClellan is plain and requires no analogy. It is not contractual but entirely statutory, arising as it does from Government Code section 825 and Education Code section 1017, subdivision (a)(2). Nothing in either of those statutes deals with which insurance policies are primary and which are excess. Nothing in either of those code sections conflicts in any way with the conclusive presumption set forth in Insurance Code section 11580.9, subdivision (d), as to which of two insurance policies is primary and which is excess. As we have stated above, there is no proscription against District's satisfying its statutory obligation by availing itself of insurance wherein the employee is the named insured, as long as the employee is fully covered as she was in the case at bench.

On the record before us, as between District and GEICO, the latter was the only insurer for the first $100,000 of GEICO's coverage. Its argument that District's duty in this case to McClellan is analogous to a contractual obligation is fallacious for two reasons. First, it overlooks the fact that McClellan is not a party to this appeal, seeks nothing from District, has

suffered no damage, and that even GEICO itself has no equities superior to either Gibraltar or District. (See *Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 514 [64 Cal.Rptr. 187].) Second, it overlooks its own policy language which covers, as an additional insured any other person or organization for his or its liability because of the acts or omissions of any insured. That broad and clear language needs no interpretation or construction. District's liability clearly arose because of McClellan's acts or omissions in colliding with and injuring Gauthier. It would have been possible for GEICO to have included in its policy carefully drawn language that would have excluded coverage to District for its obligations under Government Code section 825 and Education Code section 1017, subdivision (a)(2), in cases where District was not sued, providing it did so in such a manner as to not run afoul of the provisions of Insurance Code section 11580.1, subdivision (b)(4), requiring coverage for anyone using or "legally responsible for the use of the vehicle described in GEICO's policy." That is not the case before us, however, as no such exclusionary language was included in GEICO's policy that would deprive District of GEICO's coverage.

## IV

Appellant contends that even if section 11580.9 does apply to the instant situation, the public policy expressed therein should be disregarded in favor of the more important public policy expressed in Government Code section 825. In support of this contention, it argues that the rules which govern section 11580.9 are simply "housekeeping rules and that" for the same public policy reasons *Pacific Indemnity Co.* v. *American Mutual Ins. Co.* (1972) 28 Cal.App.3d 983 [105 Cal.Rptr. 295], and *Oxnard Union High School Dist.* v. *Teachers Ins. Co.* (1971) 20 Cal.App.3d 842 [99 Cal.Rptr. 478], are in conflict and the former should control.

Insurance Code section 11580.8 provides in pertinent part: "The Legislature further declares it to be the public policy of this state that *Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply, . . . .*" (Italics added.)

Appellant urges that that language and the language in *Lumberman's Mut. Cas.* v. *Agency Rent-A-Car* (1982) 128 Cal.App.3d 764 [180 Cal.Rptr. 546], that "[s]ections 11580.8 and 11580.9 reflect a legislative effort to reduce the volume of disputes within this area of primary, excess or sole coverage litigation between the injured parties, insureds, and insurers" (*id.,* at p. 767) compel the conclusion that Insurance Code "sections 11580.8 and 11580.9

are simply 'housekeeping' statutes, and contain rules simply for the sake of having rules."

This astounding argument is wrong and cannot be reconciled with the Legislature's declaration in Insurance Code section 11580.8 "that Section 11580.9 of the Insurance Code *expresses the total public policy of this* state respecting the order in which two or more such liability insurance policies covering the same loss shall apply [subject to certain inapplicable exceptions]. . . ." (Italics added.) Moreover, the *Lumberman's* case involved a financial responsibility *bond, not a liability policy.* Its holding that Insurance Code section 11580.9 governing coverage afforded by each of two or more *policies* applying to the same vehicle did not apply to a *surety bond* filed in compliance with motor vehicle financial responsibility laws since the surety bond merely constituted a guarantee that surety would assume the principal's liability if the latter was unable to make full payment and is inapposite to the case before us.

We conclude that the language of Insurance Code section 11580.8 regarding section 11580.9, expressing the *total public policy* of the state respecting the order in which two or more of such liability policies covering the same loss shall apply is not in conflict with Government Code section 825 or Education Code section 1017, subdivision (a)(2). Insurance Code section 11580.9 mandates the holding as a matter of law that GEICO's policy provided primary insurance for loss up to the amount of $100,000, and that Gibraltar's policy was excess to GEICO's for loss above that amount.

Moreover, the obligation of District under Government Code section 825 is not that of an insurer and nothing in Insurance Code section 11580.9 frustrates or conflicts with any provision or any underlying policy of Government Code section 825.

Appellant urges that the *Oxnard Union High School Dist.* v. *Teachers Ins. Co.* and the *Pacific Indemnity Co.* v. *American Mutual Ins. Co.* cases can be reconciled, but that if we decide that GEICO covered *District,* then the two cases are in conflict and we should conclude that the *Oxnard* case was wrongly decided and the *Pacific Indemnity* case controls. That is impossible for us to do. The *Pacific Indemnity* court itself pointed out (28 Cal.App.3d at p. 995), that the *Oxnard* case was distinguishable from it as the *Oxnard* employee's insurance admittedly covered the employer.

The *Oxnard* case involved an accident in which a third party was severely injured by an Oxnard Union High School District teacher-employee driving

his own vehicle within the scope of his employment. The employee had his own automobile insurance policy with limits of $100,000 with Teachers Insurance Company. The teacher-employee's owned automobile was the described and rated vehicle in that Teachers Insurance Company policy.

Oxnard had a policy of liability insurance with United Pacific Insurance Company, and in accordance with the requirements of Education Code section 1017, subdivision (a)(2), afforded coverage thereunder to District and the school teacher-employee for damages and injuries to a person caused by the negligent act or omission of an employee acting within the scope of his employment. As we have seen, Education Code section 1017 does not specify how this obligation to so insure is to be met. The trial court found that the $115,000 settlement should be paid by a payment of $100,000 by Teachers Insurance Company, the employee's insurer, and $15,000 by United Pacific, the District's insurer.

The *Oxnard* court concluded (20 Cal.App.3d at p. 846) that: "[A]ll that section 1017, subdivision (a)(2) requires of a school district is that it insure its employees fully and completely for the liability specified. In this case the District's policy with United provided such protection through its other insurance clause (which brought in Teachers' $100,000 policy as the primary coverage) and through its own excess coverage beyond the limits of Teachers' policy. We hold that the District properly discharged its liabilities under the Governmental Tort Liability Act by means of the insurance policies of itself and of Farrow [i.e., the teacher-employee Teacher's policy] in the manner that the trial court found and adjudicated." (Fns. omitted.)

We think the Oxnard case was correctly decided.

The *Pacific Indemnity Co.* v. *American Mut. Ins. Co.* case is distinguishable from the *Oxnard* case and from the case at bench. The *Pacific Indemnity* case held that the insurer of the Regents of the University of California was not entitled to a contribution from the insurer of a physician employed by the Regents as to the costs of defending and settling a malpractice arising out of the physician's employment where the physician's policy contained no provision extending coverage to an employer.

Unlike the *Pacific Indemnity* case where there was no provision extending coverage to the employer, the United Pacific Insurance Company policy in the *Oxnard* case and the GEICO policy in the case at bench extended coverage to District by virtue of its being a "person or organization for his or its liability because of the acts or omissions of any insured." Whether that liability was statutorily imposed in the case at bench is of no consequence

here where the record on appeal discloses no language in its policy excluding coverage for District under the circumstances of this case.

V

Appellant contends that the trial court improperly overruled GEICO's objections to evidence proferred by District/Gibraltar.

Two of these objections had to do with Exhibits "A" and "B". The rulings of the trial court rested on neither of these exhibits nor anything contained in them. There was therefore no prejudicial error in the admission of those exhibits.

Appellant's opening brief also states: "It should also be noted that the court overruled any hearsay objections that Rialto [District]/Gibraltar *may* have made to the March 13, 1985 Sowa declaration, and to Exhibit 10 attached thereto and that in any case GEICO requested a continuance in [*sic*] the hearing on the motions, in order to take the deposition of Florence McClellan, should the trial court have ruled otherwise." (Italics added.) GEICO cites no authority or reason to suggest that the court erred in so ruling. We therefore reject this contention.

The judgment is affirmed. Appellant is to bear the costs of appeal.

Woods, P. J., concurred.

**KINGSLEY, J.,** Dissenting.—I dissent.

Like the majority, I agree with respondents that Insurance Code section 11580.1, subdivision (b)(4), requires GEICO to include language in its policies that in this case makes the Rialto Unified School District (School District) an uninsured beneficiary of its teachers' private insurance. I also agree that Insurance Code section 11580.9 contains provisions that make the teacher's private insurance policy the primary policy in this case while that of the School District is merely excess. Unlike the majority, however, I am not so easily convinced that these sections are not in conflict with Government Code section 825 et seq., and that therefore the public entity may fulfill its obligations to defend and indemnify its employees by relying on the employees' personal assets. It is farcical to insist that the School District is complying with its duty to indemnify its employees when the proceeds that allegedly do so come from an insurance policy bought and paid for by the employee and when it is the employee who, following a $100,000 claim, will certainly have to pay exorbitantly for such coverage in the future and may be totally uninsurable. To call it "indemnification"

when the School District pays nothing and the employee foots the bill is absurd. Indemnification of this sort is no indemnification at all and cannot be reconciled with the mandate of the Government Code that the public entity must indemnify its employees. Therefore, this court must either decide that the Legislature intended to abrogate those sections of the Government Code requiring indemnification when it enacted the above provisions of the Insurance Code, or conclude that it did not, in which case the judgment should be reversed.

I am of the opinion that the judgment should be reversed. There is nothing that indicates that the Legislature ever contemplated repealing the indemnification of government employees when it enacted the provisions of the Insurance Code relied on by respondents. The strongest argument that can be made is that Insurance Code section 11580.8 specifies that section 11580.9 expresses the total public policy of this state regarding whether an insurance policy is primary or excess. A consideration of whether a policy is primary or excess, however, is only relevant where there are two policies covering the same loss. That is, one must first determine whether a policy is applicable in a given situation. It is manifestly obvious that if a policy does not cover the intentional acts of an insured, say, the fact that it might be a primary policy would not make it liable for an intentional tort. A policy that is otherwise an excess policy, but without such restrictions, would have to satisfy the judgment. Under the Government Code, an employee's assets are not liable for the judgments against him. The public entity is obligated to pay the entire judgment itself and cannot look to the employee for reimbursement. (Gov. Code, §§ 825.4, 825.6.) That Insurance Code section 11580.9 expresses the total public policy for determining whether an insurance policy is primary or excess does not change the fact that an employee's assets are immune. Even though an employee's policy may be primary, like the one that did not cover intentional torts, it cannot be applied to this situation. I see nothing in the Insurance Code that was intended to abolish this.

The above analysis would be transparently obvious where it not for the fact that Insurance Code section 11580.1, subdivision (b)(4) requires automobile liability policies to cover all persons responsible for the use of the vehicle. The School District could have been responsible for the use of the vehicle here under respondeat superior, only no lawsuit was ever filed against it. As it is now, the most that can be said is that the School District is responsible to Ms. McClellan to indemnify her under the Government Code. As a "person responsible" it seeks to discharge this duty by giving her the proceeds of her own insurance policy which she is already entitled to.

The majority sees nothing anomalous in this result nor even recognizes that it is inconsistent with Government Code section 825. *Oxnard Union High School District* v. *Teachers Insurance Company* (1971) 20 Cal.App.3d 842 [99 Cal.Rptr. 478], which the majority cites approvingly, and which reached the same conclusion, at least has this self-criticism: "This holding represents a reasonable construction of the statute involved. It does, however, impose approximately 87 percent of the liabilities involved upon the insurer of the person (Farrow) who under the Governmental Tort Liability Act is immune from such liabilities." (*Oxnard Union High School District* v. *Teachers Ins. Co., supra,* at p. 846, fn. 5.)

I cannot concur in such a result. Under the majority approach, had the plaintiff proceeded directly against the public entity, rather than against the employee herself, the public entity would still have been able to collect the judgment from the employee's insurance policy for its liability. (In that case, the public entity could at least claim that it was responsible to a *third* party for something.) The consequence of this holding is that employees are now required to indemnify the public entities they work for, at least where they have insurance, rather than the other way around. The employees of the School District are being asked to bear the expense of insuring the District, which it finds too burdensome to do itself. While the majority characterizes the possibility that Ms. McClellan may pay higher rates in the future as "rank unsupported speculation,"[1] our focus is not on her as an individual, but on public employees as a whole. As the court noted in *Pacific Indemnity Co.* v. *American Mutual Ins. Co.* (1972) 28 Cal.App.3d 983, 993 [105 Cal.Rptr. 295]: "If the employer-indemnitor's insurer is permitted to look to the employee-indemnitee's insurer there will be a tendency to shift the responsibility to the latter wherever possible." This "puts the burden of furnishing primary insurance on the wrong party and it does not seem warranted in the light of the legislative purpose." (*Pacific Indemnity Co.* v. *American Mutual Ins. Co., supra,* at p. 995.) I cannot believe it was the intent of the Legislature to do this and therefore feel compelled to construe the provisions of the Government Code as taking precedence over Insurance Code section 11580.1, subdivision (b)(4). Government Code section 825.6 specifies that a public entity may only recover the amount of a judgment from the employee if the employee acted with actual fraud, corruption, actual malice, or if he wilfully refused to defend

---

[1]The majority opinion evidently does not feel it is "rank, unsupported speculation" when it explores the internal machinations of insurance companies—a matter entirely beyond the record—to buttress its conclusion that Ms. McClellan's rates are based solely on her driving history and not in the least on the fact that she subjected her insurer to a $100,000 judgment.

the claim in good faith. I see no exception to this requirement on the grounds that the employee has been carrying his own insurance.

I would reverse.

Appellant's petition for review by the Supreme Court was denied November 12, 1986.